## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IFTIKHAR SAIYED** | **)** | |
| Address: POB 801, Hopewell, VA 23869 | **)** | **CIVIL ACTION NO:** _____ |
| | **)** | |
| *Plaintiff,* | **)** | **ALLEGING:** |
| | **)** | **FRAUD** |
| *-v.-* | **)** | **DC CONSUMER PROT PROC ACT** |
| | **)** | **VA CONSUMER PROT ACT** |
| **COUNCIL ON AMERICAN-ISLAMIC** | **)** | **BREACH OF FIDUCIARY DUTY** |
| **RELATIONS ACTION NETWORK, INC.** | **)** | **INFL OF EMOTIONAL DISTRESS** |
| Address: 453 New Jersey Ave SE, Wash., DC 20003 | **)** | |
| | **)** | |
| *Defendant.* | **)** | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, by his attorneys, alleges on information and belief based, *inter alia,* on the investigation of his legal counsel, except as to those allegations which pertain to Plaintiff, which are based upon personal knowledge and belief, as follows:

### NATURE OF THE ACTION

1.      This is a diversity action alleging fraud, breach of fiduciary duty, intentional infliction of emotional distress, and violations of the District of Columbia Consumer Protection Procedures Act ("DCCPPA") and the Virginia Consumer Protection Act ("VCPA") on behalf of Plaintiff who sought legal representation from Defendant Council on American-Islamic Relations Action

1

Network, Inc., formerly known as Council on American-Islamic Relations, Inc. ("CAIR"). CAIR represents itself to the public as a public interest law firm representing Muslim Americans in matters relating to civil rights violations, employment discrimination, and immigration issues. In fact, CAIR is not a law firm and it does not provide licensed legal services to its clientele. Rather, CAIR uses the veneer of a Muslim civil rights organization to carry out its principle purposes as a criminal organization. Specifically, CAIR has been identified in several federal prosecutions as a co-conspirator in the financing and support of international terrorism (i.e., jihad) operating as a covert front group for Hamas and the Muslim Brotherhood, organizations with a long history of terrorism through jihad.

2.      Plaintiff contacted CAIR through its Herndon, Virginia branch office ("CAIR-VA") from January 2007 through August 2008. Plaintiff alleges that CAIR, through its officers, directors, and executives, engaged in common law fraud and state statutory fraud, thereby damaging Plaintiff. These fraudulent acts also amounted to breach of fiduciary duty and intentional infliction of emotional distress, further damaging Plaintiff.

3.       This action arises out of a scheme by CAIR, a criminal organization which fraudulently purports to be a national public interest law firm, to conceal a wide-reaching fraud conducted by and through CAIR-VA, a CAIR branch office in Herndon, Virginia. Upon information and belief, CAIR opened up its CAIR-VA office sometime in December 2004.

4.      In or about in June 2006, CAIR-VA employed Morris J. Days III ("Days") as its "resident attorney" and "manager" of its civil rights department to provide legal representation to Muslims complaining of various civil rights abuses.

5.      Days was not and never has been an attorney. CAIR knew or should have known that Days was committing fraud by holding himself out as a CAIR attorney. CAIR knew or should have known that it was committing fraud by representing to the public, including Plaintiff, that Days was a licensed attorney.

6.      CAIR also knew, at least by November 2007 that Days fraudulently obtained money from CAIR clients for CAIR's legal representation notwithstanding CAIR's stated policy to provide *pro bono* legal services to the public and CAIR also knew or had reason to know that CAIR and Days were fraudulently representing to the public that CAIR and Days were providing legal services to their clients. Subsequent to this time and for months thereafter, CAIR made absolutely no attempt (1) to contact its clients, including Plaintiff, to inform them of this fraudulent conduct; (2) to make restitution to its clients for these fraudulent legal fees; or (3) to make any effort to investigate the legal matters CAIR-VA was conducting for its clients to determine what remedial steps, if any, needed to be undertaken. Further, CAIR made no effort to contact any government authorities regarding Days' fraudulent conduct, thereby further ratifying the scheme.

7.      After many complaints and threats of litigation by CAIR clients charging inadequate representation, CAIR finally terminated Days' employment in February 2008. At all relevant times, CAIR knew or should have known that Days had never been to law school and was not an attorney. By November 2007, CAIR knew or should have known that Days had criminally defrauded at least 30 clients by taking funds on behalf of CAIR under false pretenses. Further, CAIR knew that Days had represented over 100 CAIR clients as CAIR's "resident attorney" even though he was not licensed to practice law.

8.      Upon discovering Days' fraudulent actions, CAIR made no effort to contact any government agencies to report the criminal fraud, nor did CAIR make any effort to contact its clients to inform them of the fact that Days was not a licensed attorney. CAIR made no effort to inform their clients orally or in writing that they should seek independent legal counsel to ascertain if they had viable claims against CAIR and/or Days nor did CAIR attempt to provide restitution to their clients. Instead, CAIR and its employees, officers, and directors conspired to defraud their clients by telling them that Days was never an employee of CAIR, that he was acting on his own or as an "independent contractor", and that they (i.e., the defrauded clients) should seek redress from Days himself.

9.      CAIR and its employees knew that the representations set forth above were false insofar as CAIR's publicity and representations about Days was intended to and did in fact establish in the minds of both the general public and

4

Plaintiff that CAIR was a legally authorized PILF and Days was an employee and/or agent of CAIR acting in his capacity as both a "resident" CAIR attorney and the "Civil Rights Manager" of CAIR-VA. Days in fact acted as an employee of CAIR-VA. CAIR intended that Plaintiff would in fact rely upon these false representations.

### JURISDICTION AND VENUE

10.     This Court has federal subject matter jurisdiction of the state law claims alleged herein pursuant to 28 U.S.C. § 1332 in that this action is between parties who are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) (1)-(2) in that the sole defendant, CAIR, is a corporate entity formed and doing business in the District of Columbia.

12.     This Court has personal jurisdiction over the Defendant CAIR pursuant to, *inter alia*, D.C. Code § 13-422 in that CAIR is organized under the laws of, and maintains its principle place of business in, the District of Columbia.

### PARTIES

13.     Defendant CAIR has at all relevant times been a not-for-profit company formed and conducting its affairs principally in the District of Columbia.

14.    Plaintiff Iftikhar Saiyed is currently and has been at all relevant times a citizen of the Commonwealth of Virginia.

## FACTUAL BASIS FOR CLAIMS

### Fraud and Conspiracy to Commit Fraud

15.    CAIR represents itself to the public and purports to operate as a public interest law firm (hereafter "PILF"), providing *pro bono* legal services nationally through regional and local branch offices (collectively referred to as "CAIR"). It purports to advocate and litigate on behalf of Muslims in the U.S. to protect their civil liberties.

16.    Days was initially employed by CAIR-VA in June 2006.  CAIR-VA was a subsidiary or entity controlled by CAIR and/or acted as CAIR's alter ego.

17.    Beginning at least in or about March 2007, CAIR promoted Days to the public through various publications distributed through the United States Postal Service (hereafter "USPS") and through CAIR's web site as a well-respected and publicly honored "resident attorney," and as the "manager" of the CAIR-VA "civil rights department." (Attached hereto as Exhibit I is a true and correct copy of one such publication distributed to the public through the USPS in or about March – May 2007 by CAIR-VA; attached hereto as Exhibit II are true and correct copies of two articles published on the CAIR website posted in or about December 2007 and remaining on the CAIR website until at least September 2, 2008.)

18.     At all relevant times, CAIR knew or should have known by the exercise of ordinary due diligence that Days was not actually a lawyer and that CAIR was perpetrating a massive fraud on the readers of its website and promotional materials.

19.     Beginning in June 2006, Days worked at the CAIR-VA office, conducted client intake for CAIR-VA to provide legal representation as a licensed attorney to the aggrieved members of the public, entered into agreements to represent clients on behalf of CAIR as a CAIR attorney, and corresponded by use of the USPS and interstate facsimile transmissions and by telephone utilizing interstate wires with a variety of government agencies, private corporations, and individuals as a CAIR attorney on behalf of CAIR clients utilizing CAIR-VA stationery and identifying himself as a CAIR attorney.

20.     According to CAIR's public representations, Days, as an attorney employed by CAIR, represented well over 100 individual clients on behalf of CAIR.

21.     Days, however, was not and is not a lawyer. He never attended law school nor was he licensed as an attorney to practice law in any jurisdiction in the United States. CAIR knew or should have known that Days was not a lawyer when it hired him. The unauthorized practice of law is a criminal offense in the Commonwealth of Virginia.

22.     In addition, Days charged money for the CAIR legal services rendered by him and CAIR-VA staff from no less than 30 CAIR clients. CAIR

had actual and constructive knowledge of this fraudulent conduct by no later than November 2007.

23.     Days knowingly, willfully, and with the specific intent to defraud CAIR clients, represented that he was a competent, licensed attorney.

24.     CAIR knowingly and with the specific intent to defraud CAIR clients, or with a reckless disregard of the truth, represented that Days was a competent, licensed attorney employed by CAIR to provide these legal services.

25.     The clients who retained CAIR and Days to represent them as legal counsel, including Plaintiff, reasonably and justifiably relied upon CAIR and Days' public representations that CAIR and Days would competently represent them in their legal matters.

26.     At all relevant times, Khalid Iqbal ("Iqbal") was an official, authorized representative, and managing director of CAIR-VA and Defendant CAIR. At all relevant times, Iqbal worked out of the CAIR-VA office and was Days' superior. Iqbal in turn reported to his superiors at CAIR in the D.C. offices and his actions as the authorized representative of CAIR-VA were controlled by CAIR.

27.     Iqbal knew or should have known that Days was not a licensed attorney when he hired him. Iqbal knew in fact that Days illegally collected attorneys' fees and legal costs from CAIR clients in violation of CAIR's policy to represent its clients *pro bono* at least by November 2007. Neither Iqbal nor CAIR made any effort at that time or in the months following this discovery to

inform CAIR clients that they had been defrauded into retaining CAIR to represent them insofar as CAIR did not employ a licensed attorney.

28. After learning of the financial fraud, Iqbal and CAIR immediately entered into a conspiracy with Days to have Days continue to act as an attorney representing CAIR clients and to take affirmative steps to cover-up the fraud even though Iqbal and CAIR knew of Days' fraudulent conduct in charging legal fees and they also knew or should have known that Days was not a licensed attorney.

29. At this time, CAIR-VA intentionally, recklessly, and/or negligently continued to employ Days and CAIR and CAIR-VA intentionally, recklessly, and/or negligently continued to represent to the public and to the Plaintiff that Days was a competent, professional, and accomplished attorney.

30. CAIR-VA did not terminate Days' employment until February 10, 2008.

31. Throughout Days' employment at CAIR-VA, Iqbal and other employees of CAIR-VA had received many complaints from CAIR clients about Days' malfeasance and performance in handling their respective cases. By November 2007, the complaints increased and CAIR had substantial and overwhelming evidence that Days was not a lawyer and that he had taken legal fees from CAIR clients during his employment as a CAIR attorney and had performed no legal services or had inadequately represented their interests

32.     At all relevant times, Nihad Awad aka Nihad Hammad ("Awad") was an employee and the executive director of CAIR. At all relevant times, Parvez Ahmed ("Ahmed") was the chairman of the board of CAIR. At all relevant times, Tahra Goraya ("Goraya") was an employee and the national director of CAIR. At all relevant times, Khadijah Athman ("Athman") was an employee and the manager of the "civil rights" division of CAIR. At all relevant times, Nadhira al-Khalili ("Al-Khalili") was an employee and in-house legal counsel for CAIR. At all relevant times, defendant Ibrahim Hooper ("Hooper") was an employee and the director of communications of CAIR. At all relevant times, Amina Rubin ("Rubin") was an employee and coordinator of communications of CAIR. Defendants Iqbal, Awad, Goraya, Athman, Al-Khalili, Hooper, and Rubin shall be referred to collectively as "CAIR Management".

33.     Various defrauded clients of CAIR-VA informed CAIR Management in November and December 2007 of the fraudulent conduct of Days and CAIR-VA. On each occasion and pursuant to the conspiracy entered into between Days and CAIR, CAIR Management failed to inform the complaining clients that Days was not a lawyer and that he had obtained legal fees and costs fraudulently.

34.     By several interstate emails and telephone calls from CAIR-VA to CAIR, and in furtherance of the fraud and conspiracy to commit fraud as set forth above, on February 8, 2008 and continuing for several weeks thereafter Iqbal informed Ahmed, Awad, Goraya, and other officials of CAIR that some CAIR clients were now threatening legal action against CAIR arising out of the

fraud perpetrated by Days and CAIR. Iqbal also asked CAIR for instructions on how to proceed. Ahmed, Awad, Goraya and/or other officials of CAIR informed Athman and Al-Khalili of these developments soon thereafter.

35.     Between February 8 and 10, 2008, Iqbal, Ahmed, Awad, Goraya, Athman, and Al-Khalili agreed to terminate Days' employment and to take additional steps to further the fraud conspiracy. Specifically, CAIR Management took affirmative steps to conceal the fraud from their clients, including Plaintiff, by failing to inform them of the facts and to make false representations to the victims to lull them into a false sense of security about the status of their pending legal matters and not to report CAIR's fraud to state or federal authorities or to the media.

36.     Accordingly, CAIR Management agreed to mislead the victims, including Plaintiff, of the fraud perpetrated by Days and CAIR by simply telling them that Days was never actually employed by CAIR but rather worked as an independent contractor and that any complaints they might have they must take up with Days.

37.     Thus, during the months February through September 2008, CAIR Management further conspired to advance the fraud by knowingly concealing and misrepresenting material facts from its clients with the specific intent that these clients, including Plaintiff, would reasonably rely on these misrepresentations and omissions of material fact to their detriment. Specifically, CAIR Management knew that Days was in fact an employee of

CAIR, that during his employment he was not an attorney, and that he had

failed to handle the legal matters entrusted to him. Notwithstanding this

knowledge, CAIR Management fraudulently informed the CAIR victims,

including Plaintiff, that Days was never an employee of CAIR or CAIR-VA;

rather that he was an independent contractor of CAIR and as such the victims,

including Plaintiff, had to take up their complaints with Days. CAIR

Management also fraudulently represented to the CAIR victims, including

Plaintiff, that Days was an attorney during his employment with CAIR.

38.     Upon information and belief, during this time period, as the

complaints mounted over time, CAIR Management further agreed (a) to ignore

the least vocal and threatening CAIR victims-clients; (b) to tell the more vocal

and persistent CAIR victims-clients (seeking some responsible and professional

legal representation or recompense) only that Days was "no longer at the CAIR-

VA office" and that their only recourse was to contact Days; (c) to appease the

most adamant and threatening CAIR victims-clients with partial restitution of

their legal fees; and (d) not to disclose the criminal fraud of its CAIR clients to

any law enforcement or other government agency.

39.     As set forth above, CAIR Management agreed to pay restitution to

the most vocal, angry, and threatening CAIR clients-victims for their actual out-

of-pocket expenses incurred in paying legal fees but demanded that the CAIR

clients-victims execute a document titled "Voluntary Agreement and Release of

Claims" (hereinafter the "Release of Claims Document"). A true and correct copy

of the form of the Release of Claims Document is attached hereto as Exhibit III and incorporated herein by this reference. The Release of Claims Document purports to release CAIR from any and all liability arising out of its prior or future representation of former or current clients.

40.     Upon information and belief, various former or current clients who received some amount of restitution from CAIR signed the Release of Claims Document (the "Settling Clients").

41.     Upon information and belief, at no time did CAIR advise the Settling Clients in writing in advance of entering into the Release of Claims Document that they should seek independent legal counsel or that CAIR and its attorneys were in an adversarial position to the Settling Clients.

42.     The Release of Claims Document purports to impose a duty on the Settling Clients not to disclose to any third party the content of the Release of Claims Document or the events relating to the above-described criminal fraud which led to the signing of the Release of Claims Document (the "Silence Clause"). The Silence Clause on its face prohibits the Settling Clients from disclosing the criminal fraud to law enforcement personnel and even to their own retained independent legal counsel if retained subsequent to signing the Release of Claims Document.

43.     The Silence Clause is unlike almost all typical confidentiality provisions in settlement agreements. First, the Silence Clause relates not to a typical contract or tort claim affecting only the private, civil interests of the

parties at loggerheads but to the criminal fraud arising out of a fiduciary relationship between Days, CAIR, and the client/victims, including Plaintiff.

44.    Second, the Silence Clause provides no exceptions for responding to governmental or court-authorized legal inquiries or in the event the information subject to the Silence Clause is otherwise made public by a third party.

45.    Third, the Silence Clause is imposed by CAIR in an adversarial setting on former and current clients-victims to which CAIR had a fiduciary duty.

46.    Fourth, CAIR knew that many of its aggrieved Settling Clients were in desperate situations and that they were in manifestly unequal bargaining positions and, upon information and belief, unrepresented by independent legal counsel.

47.    Fifth, the Silence Clause is a classic case of overreaching by a fiduciary in a position to take advantage of a lesser informed client in that the Silence Clause is part of an agreement that purports to release CAIR as a PILF for future claims of breach of contract, malpractice, or breach of fiduciary duty arising out of the subject matter of the Release of Claims Document.

48.    And sixth, the Silence Clause effectively prevents the Settling Clients from disclosing this matter publicly and thereby triggering the discovery of the full breadth of the criminal fraud to the CAIR clients victimized and silently suffering the consequences because they have relied on CAIR's false

representations that their only recourse was to track down "attorney" Days and seek relief from him.

49.     The Release of Claims Document further states that the Settling Clients agree that if the Settling Clients breach the Silence Clause, CAIR will be entitled to "Damages in the amount of $25,000.00" (the "Liquidated Damages Clause"). The Liquidated Damages Clause was inserted by CAIR to concretize the fear and intimidation experienced by the Settling Clients so that they would not expose the criminal fraud publicly all in an effort to conceal the fraud from other CAIR clients-victims, including Plaintiff.

50.     The Silence Clause is Draconian and unconscionable in its scope and in its intended effect to frighten and intimidate the Settling Clients-victims who were not represented by independent legal counsel.

51.     CAIR decided to close down CAIR-VA to further the cover-up of the criminal fraud.

52.     On or about June 2, 2008, just prior to the final closing of the CAIR-VA offices, Al-Khalili, who acts as CAIR's "national legal counsel", came to the offices at CAIR-VA, met with Iqbal and discussed with Iqbal and other CAIR-VA personnel various legal matters relating to CAIR clients and specifically about the criminal fraud. Al-Khalili then had various files and computer discs, including the legal files of the CAIR clients-victims and other evidence and documents relating to the criminal fraud loaded into her car and drove off with them in order to further the fraudulent conspiracy.

53.   At all relevant times, CAIR neither continued to represent the CAIR clients-victims (or to obtain legal counsel for them), nor returned their legal files to them, all in further of the conspiracy to commit fraud.

**PLAINTIFF WAS VICTIMIZED BY THE CRIMINAL FRAUD AND CONSPIRACY**

54.   Plaintiff Saiyed came to CAIR-VA offices on January 8, 2007 to obtain legal representation relating to his claim that his then employer, Enterprise Rent-a-Car ("Enterprise"), had discriminated against him and permitted his immediate supervisor to harass him dating back to an incident in 2005, at which time Plaintiff had filed a complaint with the Virginia Human Rights Commission ("HRC") and the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and harassment.

55.   At that meeting, Days represented to Plaintiff that he was a licensed attorney employed by CAIR. Days listened to Plaintiff's presentation of the facts underlying his dispute with Enterprise and informed Plaintiff that he had a good case for harassment and discrimination and that CAIR would provide Plaintiff with legal representation by filing a formal complaint with the HRC and the EEOC. Days also assured Plaintiff that following the administrative procedure, CAIR would file a federal lawsuit against Enterprise for damages suffered by Plaintiff as a result of the hostile work environment at Enterprise. During this meeting, Days represented to Plaintiff that CAIR was a nationally-recognized PILF specially designed to represent Muslim-Americans in these kinds of disputes and that Days, acting as CAIR's "civil rights manager" and a

licensed attorney, would represent Plaintiff on a contingency basis as long as Plaintiff paid some of the legal costs. Plaintiff reasonably relied on these representations based upon what he had heard about CAIR from CAIR itself, and agreed to retain CAIR and Days to represent him.

56.   On February 24, 2007, Enterprise wrongfully terminated Plaintiff's employment in retaliation for filing his earlier 2005 complaint with the HRC and EEOC. Subsequently, Plaintiff communicated with Days to inform him of this new development by telephone, by letters sent through the USPS, and by facsimile transmissions. Plaintiff also met with Days on several occasions after his termination. Days confirmed on several occasions that Plaintiff "had a very good case against Enterprise for harassment, retaliation, and discrimination". Days informed Plaintiff that CAIR, through Days' legal representation, would represent Plaintiff on a contingency basis but that Plaintiff would have to pay some of the costs.

57.   At all relevant times, CAIR-VA, CAIR, and Days were in fact not acting as legal counsel to Plaintiff and were not authorized by law to do so.

58.   On or about January 31, 2007, Days mailed Plaintiff a copy of a letter dated that same date on CAIR stationary which Days represented was a letter Days had mailed to the chairman and chief executive officer of Enterprise, Mr. Andrew Taylor, wherein Days explained Plaintiff's claims against Enterprise. (Attached hereto as Exhibit IV is a true and correct copy of the January 31, 2007 letter.)

59.   Over the next 15 months, Days assured Plaintiff that his case was proceeding well through the administrative process and that soon CAIR would be filing a complaint in federal court. In this context, Days mailed Plaintiff a copy of a letter that he had purportedly mailed on May 2, 2007, to a Michelle B. Radcliffe, whom Days had identified as an authorized representative of Enterprise to deal with Plaintiff's wrongful termination. In this letter, Days, writing on CAIR stationary and signing his name as CAIR's Civil Rights Manager, informed Ms. Radcliffe that he was acting as Plaintiff's attorney and representative. (Attached hereto as Exhibit V is a true and correct copy of the May 2, 2007 letter.)

60.   During this time, in an apparent effort to assure Plaintiff of CAIR's and Days' legal professional competency, Days showed Plaintiff brochures such as Exhibit I. Plaintiff continued to reasonably rely on these representations of professional competency.

61.   In or about May 2008, Plaintiff visited Days on several occasions at his home, at the library, and at the hospital. Days was very ill at the time but assured Plaintiff that he and others at CAIR were handling his case with due care. At that time, Days assisted Plaintiff in filing a harassment, discrimination and retaliation complaint with the EEOC and the HRC on or about May 6, 2008 ("the May 6, 2008 EEOC Complaint"). Days told Plaintiff that these complaints were in fact a second filing of the original complaints filed by Days in this matter

over a year ago. (Attached hereto as Exhibit VI is a true and correct copy of the May 6, 2008 EEOC Complaint.)

62.   Days also instructed Plaintiff to mail the federal complaint Days had prepared against Enterprise to the federal court in Virginia. Days provided Plaintiff with the court's mailing address. Plaintiff did as Days had instructed. At about that time, Days asked for funds for legal costs on two separate occasions, which Plaintiff paid totaling approximately $300.

63.   After mailing the federal complaint Days had prepared for filing against Enterprise, the envelope was returned to Plaintiff on or about May 23, 2008, due to an improper address. (Attached hereto as Exhibit VII is a true and correct copy of the returned envelope addressed to the United States District Court, Eastern District of Virginia.)

64.   Plaintiff telephoned Days about this immediately and Days said he would take care of it himself and not to worry. Days told Plaintiff that there was "plenty of time to file" but that he would attend to it "immediately".

65.   By mid-July 2008, when Plaintiff was unable to reach Days to confirm he had filed the federal complaint against Enterprise, Plaintiff telephoned CAIR's main offices in Washington, D.C. At the time, Plaintiff spoke first to Athman, who identified herself to Plaintiff as CAIR's National Civil Rights Division Manager.

66.   During that telephone conversation, Plaintiff explained the situation about his lawsuit against Enterprise to Athman and that Days was handling the

matter out of the CAIR Herndon offices. Athman assured Plaintiff that she would look into it and get back to Plaintiff immediately.

67.   After not hearing from Athman for over a week, Plaintiff again telephoned CAIR during the week of July 21, 2008, and spoke to Al-Khalili, who informed Plaintiff that she was CAIR's general counsel. After Plaintiff explained the situation to Al-Khalili, she told Plaintiff that while Days was an attorney, he was no longer one, that he had in fact not filed any HRC, EEOC, or federal complaints. Al-Khalili informed Plaintiff not to speak further with Days and reassured Plaintiff that CAIR would look into his case and make sure it was properly pursued.

68.   On July 29, 2008, Plaintiff received a facsimile transmission from Athman at CAIR simply attaching a copy of Plaintiff's original hand-written complaint dated April 27, 2005, addressed to Mr. Matt Bedois, Plaintiff's Enterprise Assistant Manager, with a cover sheet asking Plaintiff to "Please Reply".  (Attached hereto as Exhibit VIII is a true and correct copy of the July 29, 2008 facsimile transmission.)

69.   On the one hand, the fact that CAIR had this document indicated to Plaintiff that his legal file had been transferred from CAIR-VA to the D.C. offices and CAIR was proceeding on the matter. On the other hand, Plaintiff was confused by this communication and on July 31, 2008 he sent a letter by facsimile transmission to Al-Khalili at CAIR explaining the situation that he had first been wronged by Enterprise and subsequently by CAIR and Days, and

seeking her advice. (Attached hereto as Exhibit IX is a true and correct copy of

Plaintiff's July 31, 2008 letter.)

70.   On August 7, 2008, Plaintiff received a letter by mail from Al-Khalili

on CAIR stationary informing Plaintiff that CAIR was not able to assist Plaintiff

because the HRC had found no discrimination, neither in Plaintiff's original

complaint nor in Plaintiff's appeal. Plaintiff was further confused because he

knew of no appeal. (Attached hereto as Exhibit X is a true and correct copy of Al-

Khalili's August 7, 2008 letter.)

71.   Further, Al-Khalili stated in her August 7 letter that Days was never

employed by CAIR but only acted as an "independent contractor" out of the

CAIR Herndon offices, which Al-Khalili claimed conducted its business separate

and apart from CAIR. Both statements were false and Al-Khalili knew them to

be false.

72.   Plaintiff made several attempts to settle the matter with CAIR by

letter but CAIR refused to put anything further in writing and only offered to

meet with Plaintiff in CAIR's D.C. offices. Plaintiff was afraid to do so given

CAIR's past fraudulent behavior and therefore declined.

73.   On or about August 5, 2008, Plaintiff received a "Dismissal and

Notice of Rights" form letter from the EEOC indicating that his file setting forth

a complaint against Enterprise was being closed because Plaintiff's complaint

was not timely filed. The Dismissal and Notice of Rights letter also informed

Plaintiff that he had 90 days during which to file any legal action in federal

court. (Attached hereto as Exhibit XI is a true and correct copy of the Dismissal and Notice of Rights letter.)

74.   Unable to find *pro bono* counsel, and unable to afford private counsel, Plaintiff filed a federal complaint *pro se* against Enterprise on October 31, 2008 with the United States District Court, Eastern District of Virginia, No. 1:08cv1147 ("Enterprise Complaint"). (Attached hereto as Exhibit XII is a true and correct copy of the Enterprise Complaint.)

75.   On January 13, 2009, the District Court for the Eastern District of Virginia granted Enterprise's motion for summary judgment dismissing Plaintiff's Enterprise Complaint on the grounds that Plaintiff had not filed the May 6, 2008 EEOC Complaint against Enterprise within 300 days of his termination and as a result Plaintiff was barred from bringing the lawsuit. (Attached hereto as Exhibit XIII is a true and correct copy of the District Court's Memorandum Opinion granting Enterprise summary judgment.)

76.   December 21, 2007 was the 300th day from the date of Plaintiff's termination and was therefore the last day to file his complaint with the HRC/EEOC.

77.   Plaintiff, again *pro se*, appealed the District Court's grant of the motion for summary judgment to the United States Court of Appeals for the Fourth Circuit. On August 24, 2008, the Court of Appeals, in an unpublished *per curiam* opinion, denied Plaintiff's appeal. Plaintiff has no further appeal as of

right. (Attached hereto as Exhibit XIV is a true and correct copy of the Court of Appeals' opinion denying the appeal.)

78.   Plaintiff relied on CAIR and Days to file his administrative and legal complaints in a timely fashion. But for their failures and fraudulent conduct, Plaintiff would have filed a timely complaint with the EEOC and HRC and would have had a valid claim in federal court against Enterprise for wrongful and retaliatory termination.

79.   CAIR's conduct as set out above has caused Plaintiff direct and consequential monetary damages, including, but not limited to, $300 paid to CAIR for legal costs, at least $600 for travel expenses incurred during Plaintiff's meetings with Days, and damages relating to Plaintiff's claims against Enterprise which were dismissed by the U.S. District Court for the Eastern District of Virginia.

80.   In addition, Plaintiff has suffered severe emotional distress resulting from CAIR's breach of fiduciary duty owed to him, including anxiety, lack of appetite, inability to sleep, relationship problems with his friends and family, inability to sustain employment resulting from his anxiety, and other manifestations, resulting in damages not yet quantified but no less than $75,000.

81.   At all relevant times, CAIR carried out the fraud and the conspiracy to commit fraud described herein knowingly, willfully, and with the specific intent to defraud Plaintiff and further acted knowingly and willfully to

conceal the fraud. But for CAIR's concealment of the fraud and the conspiracy to commit a fraud, which CAIR was aware of and had fully joined by December 21, 2007, Plaintiff could have taken steps to preserve his claims against Enterprise.

82.     All of the acts described above and attributed to Days were carried out in his capacity as an employee and/or agent of CAIR-VA and carried out within and arising from the ordinary course of Days' responsibilities and employment at CAIR-VA and/or within the scope of his authority as the "manager" and "resident" attorney in the CAIR-VA civil rights department.

83.     CAIR-VA was operated and controlled ultimately by CAIR and treated as a wholly owned subsidiary and/or related entity and/or alter ego. Upon information and belief, decisions relating to the opening of CAIR-VA, its funding, the staffing of its executives, promotional materials, its operations, its closing, and the transfer of the client files from CAIR-VA to CAIR's offices in D.C. were ultimately controlled by CAIR.

## CAUSES OF ACTION

### COUNT ONE—VIOLATIONS OF DCCPPA: D.C. CODE § 28-3901 ET SEQ.

84.     Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

85.     This count is brought by Plaintiff against Defendant CAIR alleging a cause of action under the DCCPPA, D.C. Code § 28-3905(k)(1). Specifically, Plaintiff alleges that he has been damaged as a result of the fraudulent acts as set forth above and that this Count One arises from the purchase of, transfer of,

and/or providing information about the offering of consumer services in the ordinary course of business as those terms are defined by the DCCPPA.

86.     Plaintiff is a "person" within the meaning of D.C. Code § 28-3901(a)(1).

87.     At all relevant times, CAIR operated as a "person" within the meaning of D.C. Code § 28-3901(a)(1).

88.     At all relevant times, CAIR-VA and CAIR represented to the public and to Plaintiff that CAIR was providing legal services as a PILF in the "ordinary course of business" as that term is generally used in the DCCPPA. Plaintiff retained CAIR to provide legal services. But, in fact, CAIR was not a PILF and was not authorized by law to provide legal services as a PILF.

89.     CAIR conducted trade practices in violation of the law of the District of Columbia. Specifically, defendants violated D.C. Code §§ 28-3904(a), (b), (d), (e), (f), (g), (h), (i), (m), (s), (u), and (v).

90.     As a result of CAIR's violation of the DCCPPA, Plaintiff has suffered financial damages and other damages arising from the conduct described herein.

91.     As a result of its misconduct, the Defendant CAIR is liable to Plaintiff for his losses in an amount to be determined at trial.

92.     Pursuant to D.C. § 28-3905(k)(1)(A), Plaintiff is entitled to recover threefold their respective damages, or $1,500 per violation, whichever is greater, from the Defendant.

93.     Pursuant to D.C. § 28-3905(k)(1)(B), Plaintiff is entitled to recover reasonable attorney's fees from the Defendant.

94.     Pursuant to D.C. § 28-3905(k)(1)(C), Plaintiff is entitled to recover punitive damages from the Defendant insofar as the fraudulent acts set forth above amounted to egregious and intentional and/or reckless conduct carried out by the Defendant as a fiduciary against Plaintiff who was in a far inferior position of knowledge and experience and who entrusted his most important legal matters to the Defendant under false pretenses.

95.     Pursuant to D.C. § 28-3905(k)(1)(D), Plaintiff is entitled to seek an injunction against the use of the unlawful trade practices set forth above.

96.     Pursuant to D.C. § 28-3905(k)(1)(E), Plaintiff is entitled to such other additional relief as may be necessary to restore to the Plaintiff's money or property, which may have been acquired by means of the unlawful trade practices set forth above.

97.     Pursuant to D.C. § 28-3905(k)(1)(F), Plaintiff is entitled to any other relief which the Court deems proper.

### COUNT TWO—VIOLATIONS OF VCPA: VA. CODE ANN. § 59.1-196 ET SEQ.

98.     Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

99.     This count is brought by Plaintiff against Defendant CAIR alleging a cause of action under the VCPA, Va. Code Ann § 59.1-204. Specifically, Plaintiff alleges that he has been damaged as a result of the fraudulent acts as

set forth above and that this Count Two arises from the advertisement, sale, or offering for sale of services to be used primarily for personal, family, or household purposes as those terms are defined by the VCPA.

100.   At all relevant times, Defendant was a "person" within the meaning of Va. Code Ann. § 59.1-198.

101.   Plaintiff Saiyed is a "person" within the meaning of Va. Code Ann. § 59.1-198.

102.   At all relevant times, CAIR operated as a "supplier" within the meaning of Va. Code Ann. § 59.1-198.

103.   At all relevant times, Defendant CAIR represented to the public and purportedly conducted its affairs directly and through CAIR-VA as a PILF which advertised, offered for sale, and in fact purportedly provided legal services to be used primarily for personal, family, and/or household purposes as those terms are defined and used in the VCPA. In fact, however, neither CAIR nor CAIR-VA provided such legal services.

104.   At all relevant times, Defendant CAIR conducted consumer transactions as that term is defined in Va. Code Ann. in § 59.1-198.

105.   At all relevant times, Defendant CAIR, engaged in unlawful fraudulent acts and/or practices in violation of the VCPA. Specifically, Defendant violated §§ 59.1-200(A)(1)-(3), (5)-(6), (8), and (14).

106.    As a result of Defendant CAIR's violation of the VCPA, Plaintiff has suffered financial damages and other damages arising from the fraudulent conduct set forth herein.

107.    As a result of its misconduct, Defendant CAIR is liable to Plaintiff for his losses in an amount to be determined at trial.

108.    Pursuant to Va. Code Ann. § 59.1-204(A), because the fraudulent acts set forth above were carried out by Defendant willfully, Plaintiff is entitled to recover threefold his damages, or $1,000 per violation, whichever is greater from Defendant CAIR.

109.    Pursuant to Va. Code Ann. § 59.1-204(B), Plaintiff is entitled to recover reasonable attorneys' fees and court costs from Defendant CAIR.

### COUNT THREE—COMMON LAW FRAUD AND CONSPIRACY TO COMMIT FRAUD

110.    Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

111.    This count is brought by Plaintiff against Defendant CAIR alleging a cause of action for common law actual fraud, constructive fraud, conspiracy to commit actual fraud and/or conspiracy to commit constructive fraud under the common law of the Commonwealth of Virginia and/or the District of Columbia.

112.    As set forth above, Defendant CAIR damaged Plaintiff through its fraudulent acts.

113.    In addition, Defendant CAIR conspired with Days by entering into an agreement with Days to engage in the fraudulent conduct described herein

above and because Defendant CAIR provided substantial assistance in carrying out the fraudulent conspiracy.

114.    Defendant CAIR is liable for all of the damages caused by its own fraudulent acts and, as a result of the conspiracy to commit fraud, for all of the damages caused to Plaintiff by any member of the conspiracy.

115.    Defendant CAIR is liable for punitive damages arising from its fraudulent acts insofar as its conduct in furtherance of the fraudulent acts as set forth above amounted to egregious and intentional and/or reckless conduct carried out by the Defendant CAIR and other members of the conspiracy to commit fraud against Plaintiff. Defendant CAIR was a fiduciary to Plaintiff in that Plaintiff had entrusted his confidential legal affairs to CAIR and he was in a far inferior position of knowledge and experience relative to CAIR.

### COUNT FOUR—BREACH OF FIDUCIARY DUTIES

116.    Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

117.    This count is brought by Plaintiff against Defendant CAIR alleging a cause of action for breach of fiduciary duties under the common law of the Commonwealth of Virginia and/or the District of Columbia.

118.    As set forth above, Defendant CAIR purported to act as a nationwide PILF and was in the position of a fiduciary to Plaintiff insofar as Plaintiff, who was in a far inferior position of knowledge and experience to CAIR, accepted CAIR's offer to provide legal services in a matter of great importance to

Plaintiff. As such, Plaintiff reposed trust and confidence in Defendant CAIR and CAIR agreed with Plaintiff to act as a fiduciary.

119.    As set forth above, Defendant CAIR's wrongful conduct arising out of the fraud set forth herein breached this duty of care. Specifically, Defendant CAIR's wrongful conduct constituted the unauthorized practice of law and criminal fraud.

120.    As set forth above, Defendant CAIR damaged Plaintiff through its breach of fiduciary duties.

121.    As set forth above, Defendant CAIR conspired with and aided and abetted others to breach its fiduciary duties insofar as it knew of the fraudulent conduct described herein, it agreed to join the conspiracy to commit fraud, and it provided substantial assistance in carrying out fraud.

122.    Defendant CAIR is liable for all of the damages caused by the breach of fiduciary duties owed to Plaintiff.

123.    Defendant CAIR is liable for punitive damages arising from its wrongful acts constituting breach of fiduciary duties insofar as its conduct in furtherance of its wrongful acts as set forth above amounted to egregious and intentional and/or reckless conduct carried out by Defendant CAIR as a fiduciary against Plaintiff who was in a far inferior position of knowledge and experience and who entrusted his most important legal matters to Defendant CAIR under false pretenses.

## COUNT FIVE—INFLICTION OF EMOTIONAL DISTRESS

124.    Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

125.    This count is brought by Plaintiff against Defendant CAIR alleging a cause of action for intentional infliction of emotional distress under the common law of the Commonwealth of Virginia and/or the District of Columbia.

126.    As set forth above, the wrongful conduct of Defendant CAIR giving rise to the fraud described herein was (a) intentional and/or reckless and (b) outrageous and intolerable.

127.    At all relevant times, Plaintiff had entrusted sensitive, personal, and potentially valuable legal matters to the Defendant CAIR, which had held itself out to Plaintiff as a PILF and as fiduciary to Plaintiff. As set forth above, Plaintiff was defrauded by Defendant CAIR.

128.    As a direct result of the Defendant CAIR's outrageous and intolerable wrongful conduct described above, Plaintiff has suffered severe emotional distress and has been damaged thereby.

129.    Defendant CAIR is liable for punitive damages arising from its wrongful acts constituting intentional infliction of emotional distress insofar as its conduct in furtherance of the wrongful acts as set forth above amounted to egregious and intentional and/or reckless conduct carried out by Defendant CAIR as a fiduciary against Plaintiff who was in a far inferior position of

knowledge and experience and who entrusted his most important legal matters to Defendant CAIR under false pretenses.

## PRAYERS FOR RELIEF

130.   **WHEREFORE**, Plaintiff Saiyed prays for judgment and relief as follows, where applicable:

131.   Awarding compensatory damages in favor of Plaintiff against Defendant for the damages sustained as a result of the wrongful conduct alleged and as will be established through discovery and/or at trial, together with interest thereon.

132.   Awarding treble damages, attorneys' fees, and costs in favor of Plaintiff against Defendant for the damages sustained in violation of the DCCPPA and the VCPA as alleged herein.

133.   Awarding punitive damages to Plaintiff against the Defendant for the egregiously wrongful conduct alleged herein.

134.   Granting declaratory and/or injunctive relief as appropriate.

135.   Imposing a constructive trust as appropriate.

136.   Awarding attorneys fees and legal costs.

137.   And, such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

138.   Plaintiff hereby demands a jury trial.

Dated: January __, 2010.

Respectfully submitted,


LAW OFFICES OF DAVID YERUSHALMI, P.C.


By: ___/s/_____
        David Yerushalmi

David Yerushalmi
District of Columbia Bar No. 978179
LAW OFFICES OF DAVID YERUSHALMI
P.O.B. 6358
Chandler, Arizona 85246
david.yerushalmi@verizon.net
Tel: (646) 262-0500
Fax: (801) 760-3901