# LIST OF EXHIBITS

<u>EXHIBIT NO.</u>          <u>DOCUMENT DESCRIPTION</u>

**I**              **CAIR-VA Publication, March – May 2007**

**II**             **CAIR Web Site Posting, December 2007**

**III**            **Release of Claims Document**

**IV**             **January 31, 2007 Letter from Days to Andrew Taylor**

**V**              **May 2, 2007 Letter from Days to Michelle B. Radcliffe**

**VI**             **May 6, 2008 EEOC Complaint**

**VII**            **Returned Envelop Addressed to D.Ct., E.D. Va.**

**VIII**           **July 29, 2008 CAIR Fax from Athman to Plaintiff**

**IX**             **July 31, 2008 Letter from Plaintiff to Al-Khalili**

**X**              **August 7, 2008 Letter from Al-Khalili to Plaintiff**

**XI**             **August 5, 2008 Dismissal and Notice of Rights Letter**

**XII**            **Complaint re: *Saiyed v. Enterprise***

**XIII**           **Opinion Granting Enterprise Summary Judgment**

**XIV**            **Fourth Circuit Denial of Plaintiff's Appeal**

**EXHIBIT I**

# EXHIBIT I

## CAIR-VA Publications re: Morris Days and Activities as PILF

CAIR-VA PUBLICATION MAILED VIA UNITED STATES POSTAL SERVICE

 **CAIR**

March/April, 2007
Volume 1, Issue 1



*Council on American Islamic Relations MD/VA Chapter*

### Message from the Board & Executive Director Khalid Iqbal

Assalamu Alaikum!  Welcome to our first bi-monthly newsletter! We are excited about the opportunity to share our achievements with you and provide you with an overview of our activities and programs.

Our chapter has come a long way in the past year !  We have introduced several empowerment programs for our community, a few of which are mentioned in this newsletter. We think that our Youth Leadership Training Program will help our youth become better citizens. We are also launching the "Legal Literacy Program" that will educate and empower our community members in the American legal system. CAIR MD & VA has acquired the assistance of a number of local attorneys who will give workshops and seminars on topics that are important to our community. (con't p.3)

**Some highlights in this issue:**

- Meet our Resident Attorney, Morris Jamil Days- p.1
- Local Civil Rights Cases- p.2
- Free Law Clinic- p.2
- Youth Leadership Program- p.1



**In Every Issue:**

- Civil Rights Watch      2
- Volunteer Highlights    4
- Message from the Board  1
- Civil Rights FYI        4

### Meet Our Resident Attorney!

Attorney Morris Jamil Days, Civil Rights Manager of CAIR MD/VA is at the front lines of this chapter's effort to protect civil liberties and empower American Muslims to invoke legal protections afforded to them by local, state, federal and constitutional legislations.

Days, a graduate of Temple University Law School, joined the organization in June, 2006.  He specializes in Criminal Law and Civil Rights/Social Service Advocacy Law.  He has been a member of the Philadelphia Bar Association and the American Bar Association since 1997.

His professional achievements include receiving the Rosa Parks Wall of Tolerance Award in 2005 given by the Southern Poverty Law Center.



"I am proud to work for an organization that has done so much for the American Muslim community.  Now when Muslims are targeted, there is a unified and powerful voice that responds. Never before have corporate America, small business, and large media organizations alike had to contend with the Muslim community on an activist and legal level," Days says.  (con't p.2)

### Youth Leadership Program

CAIR MD/VA kicks off its first annual Young Muslims Leadership Program (CYMLP) this summer! For one week, students age 16 and up will be immersed in our American political system, learning first hand from senators, congressmen and women, and leaders from our Muslim community who have had years of experience working with the system. (con't p.3)



Exhibit I-1

## Meet Our Resident Attorney (con't)



Leading the civil rights division for such an active chapter keeps Days extremely busy. An average day for him entails meeting with community members about their discrimination concerns, following up on formal complaints filed with the Human Rights Commission, the EEOC, and federal district court, and training volunteers to become civil rights activists.

Even with such a heavy load, Days still manages to find time to organize and lead monthly legal literacy classes offered free to the community. He feels that when an individual or community utilizes the American legal system in the defense of their

civil liberties, they are making a substantial investment in their future. "Without legal literacy, a person is not able to make informed decisions and is not aware of the implications of his or her actions. They find themselves in the legal arena without any knowledge of what is going on. (con't p.4)



*"Being an American Muslim in the United States places you in the legal arena from the moment you step out of your house." Morris Days*

## Legal Literacy Program



The Council of American-Islamic Relations MD/VA (CAIR-MD/VA) is partnering with Legal Services of Northern Virginia (LSNV) to offer community members access to free legal services and education. Such programs are to include free legal consultation and representation, legal workshops and

seminars, and legal education.

LSNV, a non-profit public interest law firm that provides free legal assistance to low-income residents of Northern Virginia, receives most of its funding from state sources, making this American-Muslim legal partnership the first of its kind. (con't p.3)

## Civil Rights Watch



The month of February kept our civil rights team extremely busy! Attorney Morris Days took on 8 new discrimination cases (bringing the total to 20 for 2007), worked with the Human Rights Commission and the Equal Employment Opportunity Commission on existing cases, and successfully closed one case involving Hertz Rental Car. After receiving a call from CAIR MD/VA, Hertz management agreed to accommodate a Muslim whom they were about to fire for taking time for prayer.



A few notable cases Days opened in February include the following:

◆ CAIR-MD/VA has filed a complaint with Internal Affairs of the Fairfax County Police Department after they sponsored a 'safety' meeting for all county bus drivers, alerting them to the potential signs of an imminent terrorist attack...by American Muslim children. A video depicting young Palestinian children being trained to become suicide bombers was shown to 1700 Fairfax County bus drivers, as a warning of what they may encounter among the American Muslim youth population. (con't p. 3)

Exhibit I-2

## Legal Literacy Program (con't)

So far, eight volunteer attorneys and six law students have signed on to launch this ground-breaking project under the direction of attorney Morris Days, Civil Rights Manager of CAIR-MD/VA's Northern Virginia office.

Days himself kicked off the new project with a 2-hour *Introduction to American Law* class last month.

The aim of this class is to provide community members with a solid background of civil rights, local and national law. An additional class covering topics relevant to the Muslim and immigrant community will be offered monthly, InshaAllah.



## Civil Rights Watch (con't)

CAIR-MD/VA has filed a complaint with both the Virginia Department of Labor and the Virginia Human Rights Commission on behalf of a local driver for being discriminated against by his former employer, a high-profile Virginia-based government contractor.

The complaint details that the driver, the only Muslim employee, was illegally withheld 8 years of overtime and other federal and state sanctioned benefits and was then inappropriately fired by the transportation company once he became cognizant of and began pursuing his right to receiving such benefits. The complaint further alleges that he was unfairly singled out as a Muslim, as no other employee, CAIR has confirmed, was denied such benefits.

Over the duration of his 8 years employment, the driver, an immigrant from Palestine, worked an average of 120 hours per week for the transportation company.

CAIR-MD/VA has filed a complaint with IHOP Corporate Headquarters on behalf of a Muslim family of 26 who was removed from IHOP in Alexandria, VA by the manager. The complaint alleges that his motives were unfounded, biased and discriminatory, as witnesses confirm. IHOP Corporate has since fired the manager but has denied further responsibility for the incident.



## Youth Leadership Program (con't)

Emphasis will also be placed in understanding democracy within the wider context of Islam and Prophet Mohammad's (PBUH) demonstrated style of leadership.

In addition to the multidimensional experience students will receive when witnessing our political system in action, they will also learn how to research, interview, lobby, and debate topics of public importance. A model congress will be formed by the participants, and students will also host a town hall meeting.

If interested in applying for this exciting program, please contact our office for application details as soon as possible at: 703.689.3100.

## Message from the Board (con't)

Our resident attorney, Br. Morris Jamil Days and volunteer staff have worked diligently to process over 100 civil rights cases that we have received in the past year. Our goal is to give personal attention to each case, as this is one of our main functions in supporting our community.

We want to thank you for supporting our programs during the past year and urge you to continue to support us with your volunteer time and financial contributions. CAIR MD & VA is eligible to receive zakat funds and your contributions are tax deductible. (Tax I.D. # 04 361 7757). Please contribute generously!

The CAIR MD & VA Board of Directors would like to thank you for the opportunity to serve you! We are proud to be part of the mission of advancing and supporting the rights of all our community members.



Exhibit I-3

**Council on American Islamic Relations**
MD/VA Chapter

585 N. Grove Street
Suite G10
Herndon, VA 20170

Phone:
703.689.3100

Fax:
703.689.9858

E-Mail:
morrisdays@aba.net

We're on the Web!
See us at
www.cairmdva.com

*Upcoming Events:*

Free Legal Literacy Seminars
(2 Hours Each; Lunch Included)

American Legal System (VA).....3/17

Wills & Estates (MD)............3/31

Employment Law (VA)............4/14

Please RSVP as soon as possible as
classes fill up quickly. 703.689.3100

## Volunteer Highlights

Special thanks goes out to Mohammad Farooq, who has tirelessly supported Attorney Morris Days in the civil rights division. Sister Aisha Feliciano has also dedicated herself to assisting the organization's daily office operations and has helped out tremendously with food preparations for our weekend seminars. Sister Iman, new to CAIR MD/VA, is now helping the chapter with various office tasks as well as weekend events.

Intern Mehwish Khalil, a senior high school student from Herndon High School, has recently joined the team and has already put in many hours arranging programs and projects for us!

In addition to giving a presentation at a local Jewish community center and assisting with our Legal Literacy Seminars, she is now working on developing our new Young Muslims Leadership Program to take place this summer.



*(from left: Mehwish, Nida, Iman, Aisha, Morris, and Mohammad)*

We also appreciate the Bangladeshi Women's Group for helping us with a large mailing in February! Our success depends on all our volunteers! If interested, please contact us at 703.689.3100



### Resident Attorney (con't)

This, in my mind, is equivalent to being incompetent to stand trial. Being an American Muslim in the United States places you in the legal arena from the moment you step out of your house. You can be profiled, targeted, attacked, denied access to services, cheated, harassed and those empowered to protect your rights can even demonstrate hostility towards you. That is why it is imperative that our community develop a sophisticated level of legal literacy. We cannot protect ourselves and our families without it."

Days welcomes community members to come by the chapter office anytime and is available for appointment from 10-5 everyday except Friday's and Sundays.

## Civil Rights FYI

According to the US Department of Labor *Fair Labor Standards Act,* *"Unless specifically exempted, employees covered by the Act must receive overtime pay for hours worked in excess of 40 in a workweek at a rate not less than time and one-half their regular rates of pay."*

### About Our Organization...

The Council on American-Islamic Relations (CAIR) is a non-profit grassroots organization dedicated to presenting an Islamic perspective on issues of importance to the American public. CAIR is the largest American Muslim civil rights and advocacy organization in the United States, serving the interests of more than seven million American Muslims with 32 chapters and offices nationwide and in Canada.

CAIR's vision is to be a leading advocate of social justice and mutual understanding. It is our mission to enhance a general understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims and build coalitions that promote justice and mutual understanding.

Exhibit I-4

**EXHIBIT II**

# EXHIBIT II
## CAIR Publications re: Morris Days and Activities as PILF

### CAIR
Council on American-Islamic Relations

Search

*In the Name of God, the Compassionate, the Merciful*

Article Details                                                                 September 02, 2008

»CAIR-MD/VA: Lawsuits End Citizenship Delays        📷 RSS   ✉ Email  🖨 Print

## CAIR-MD/VA: Lawsuits End Citizenship Delays
Posted 12/24/2007 5:41:00 PM

Issues

**Related Information**

Source: Associated Press
Author: Matthew Barakat

Subscribe   Donate

CAIR is Zakat-eligible

Newly minted U.S. citizen Issameldin Mohamed, a native of Egypt, wasn't entirely sure that suing the U.S. government was a good idea.

"In (Egypt), if you sue the government, there's something wrong here," he said, pointing to his head to indicate how foolhardy it would be.

But Mohamed, 45, of Owings Mills, Md., was out of patience, having waited the better part of 10 years to obtain citizenship. Since 2005, he had passed his citizenship test, and waited only for his name to be cleared in a government background check.

Finally, after filing a lawsuit in October at U.S. District Court in Baltimore that named Department of Homeland Security Secretary Michael Chertoff, FBI Director Robert Mueller and other top government officials as defendants, his naturalization application was approved. On Dec. 14, he became a citizen.

"I believed it only when they called my name and gave me my certificate," Mohamed said.

Mohamed and an increasing number of immigrants have decided to sue in federal court to force the government to take action on their citizenship applications.

At the U.S. District Court in Alexandria, roughly 100 lawsuits have been filed in 2007 demanding action on stalled citizenship applications. That represents roughly 8 percent of the entire civil docket at the courthouse, which is among the busiest in the nation.

The lawsuits cite federal law requiring agencies to act on a petition within 120 days after it has been reviewed. Rarely do the lawsuits go before a judge, according to a review of court records. Usually, the plaintiff agrees to drop the case after receiving assurances that it will be resolved quickly and favorably.

**Morris Days, an attorney with the Maryland-Virginia chapter of the Council on American-Islamic Relations,** has helped Mohamed and 15 others file similar petitions at federal courthouses in the region in recent months.

Days said six already have received citizenship papers or are about to, and he's optimistic that all the applications will be approved.

The holdup invariably is the name check, Days said. Muslims are particularly vulnerable to delays, he said, because names of innocent immigrants get confused with those on terror watch lists. . . .

Delays of two, three or four years are not uncommon, he said.

U.S. Citizenship and Immigration Services, or USCIS, the federal agency responsible for processing citizenship applications, has acknowledged that hundreds of thousands of applicants have experienced unacceptable delays because of backlogs in the background checks, which are conducted by the FBI. . .

Shazia Naz, 34, of Fairfax, also received her citizenship earlier this month after suing the government in July in federal court in Alexandria. She had passed her citizenship test in February 2006 but never received final approval; immigration officials told her the delay was because of her name and the inability to complete the background check.

She said it would have cost her as much as $5,000 to hire an immigration lawyer, but she filed the suit herself with assistance from the **Council on American-Islamic Relations.**

Return

Generated by www.PDFonFly.com

Exhibit II-1

Copyright © 2008, Council on American Islamic Relations (CAIR). All rights reserved. CAIR is a registered trademark. CAIR is a not for profit organization recognized as tax exempt under U.S. Internal Revenue Code section 501(c)(3).

Terms of Use | Privacy Policy

Generated by www.PDFonFly.com

Exhibit II-2



**CAIR**
Council on American-Islamic Relations

Search

*In the Name of God, the Compassionate, the Merciful*

Article Details                                                    September 02, 2008

»Video: CAIR-MD/VA: Muslims Granted Citizenship          🖃 RSS  ⌧ Email  🖶 Print

## Video: CAIR-MD/VA: Muslims Granted Citizenship
Posted 12/20/2007 3:38:00 PM

Issues

To view the video, click here.

The husband of an Iraq war veteran has received the green light to join her on U.S. soil, and the route to U.S. citizenship also has ended in triumph for two more local immigrants, News4's Cheryl Butler reported.

It was a long, rocky journey from Egypt to the United States, but Sgt. Vanessa Kirk finally has her husband by her side.

The two fell in love in Iraq. Kirk worked in a hospital south of Baghdad and her husband, Leo, an Egyptian citizen, was a translator there.

First came love, then came marriage and a 10-month-long battle to bring Leo to the United States.

Finally, his visa was granted, thanks in part to the Council on Islamic-American Relations.

"We petitioned the courts, and they've had a change of heart," said CAIR's Morris Days.

This year CAIR filed 22 lawsuits in federal court against the FBI, the Department of Homeland Security and other agencies on behalf of Muslim immigrants stuck in limbo.

Issameldin Mohamed came to the United States in 1997 from Egypt in search of citizenship. He left his two kids at home with hopes of sending for them later, but the process of gaining citizenship, including an FBI background check, took years.

"My kids would call, 'Baba, when do you get your citizenship? When can we come over?'" Mohamed said. "I have no answer."

Four years and one lawsuit later, on Dec. 14, Mohamed achieved his dream.

"I felt, 'OK, this is mine now,'" Mohamed said.

Shazia Naghmi shared a similar saga of delays and triumph.

She came to the United States in 1999 on a student visa from Pakistan.

An FBI background check took 22 months.

"I think it's because I'm from Pakistan," Naghmi said.

**Related Information**

Source: NBC4
Author: Cheryl Butler

Then Shazia filed a lawsuit through CAIR. Three days later, on Dec. 5, Shazia became a U.S. citizen.

"I was just so excited. I was telling everyone I was going to be naturalized," Shazia said.

Six of CAIR's immigrant plaintiffs will be granted citizenship after review. Sixteen cases are still pending.

"We're very, very elated, appreciative of that," Days said.

Return

Subscribe  Donate
CAIR is Zakat-eligible

Generated by www.PDFonFly.com

Exhibit II-3

Copyright © 2008, Council on American Islamic Relations (CAIR). All rights reserved. CAIR® is a registered trademark.
CAIR is a not for profit organization recognized as tax exempt under U.S. Internal Revenue Code section 501(c)(3).

Terms of Use | Privacy Policy

Generated by www.PDFonFly.com

Exhibit II-4

# EXHIBIT III

# EXHIBIT III

## Form of Release of Claims Document

### VOLUNTARY AGREEMENT and RELEASE OF CLAIMS

This voluntary agreement and release of Claims ("Agreement") is entered into between the Council on American-Islamic Relations and:

Name:                    (hereinafter, "Recipient") Social Security or ID No.:

_____          _____

Address:                 Date and Location of Birth:

_____          _____

For the sum of _____ dollars, the delivery, receipt and sufficiency whereof is hereby acknowledged, Recipient _____ hereby completely releases and forever discharges the Council on American-Islamic Relations ("CAIR"), their heirs, executors, administrators, agents and assigns, and all their other chapters, firms or corporations liable or who might be claimed to be liable, none of which admit any liability to the undersigned but all expressly deny any liability, of and from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of services, expenses and compensation which the undersigned now has or which may hereafter accrue or otherwise be acquired, on account of, or in any way growing out of my contacting CAIR on or about the day of _____ to handle my case regarding

_____
_____.

The undersigned agree that the receipt of funds in the amount set forth in this agreement does not constitute the admission of liability, direct or vicarious, or violation of any applicable law, contract provision or any rule or regulation.

Recipient hereby declares that the terms of this release have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and release of any and all claims arising out of the aforesaid incident and for the express purpose of precluding forever and further additional claims arising out of the aforesaid incident.

Recipient further states that this Release has been reviewed by Recipient's own privately retained counsel, or that Recipient has had the opportunity to retain counsel for this purpose and knowingly and voluntarily

Exhibit III-1

wishes to proceed nevertheless.  Moreover, Recipient represents that there has been no coercion, promise or unwarranted pressure to sign this Release on part of CAIR, its agents or assigns.

The undersigned agree that this Agreement is the only and the complete agreement between them and that no party makes any other representations or promises regarding the aforesaid incident.

Further to the extent any prior statements or representations were made they are hereby integrated into this Agreement and any contrary statements are superseded by this Agreement. Provided if any provision of this Agreement is held invalid or unenforceable, either in its entirety or by virtue of its scope or application to given circumstances, the provision shall be deemed modified to the extent necessary to render it valid or not applicable to given circumstances, as the situation may require, and this Agreement shall be construed and enforced as if such prevision [sic] had been included herein as so modified in scope or application or had not been included herein, as the case may be. Provided further, that should such modification prove impossible, the invalidity of any provision(s) of this Agreement shall not affect the continued validity of the remaining provision(s) which shall remain in full force and effect.

Recipient hereby agrees that at all times and not withstanding any termination or expiration of this Agreement, it will hold in strict confidence and not disclose to any third party any information regarding this Agreement or the aforesaid incident surrounding this Agreement, except as approved in writing by CAIR.

Recipient herby [sic] agrees that in the event of a breach of this Agreement CAIR will be entitled to Damages in the amount of $25,000.00 from Recipient for the purpose of conducting meetings, workshops, press releases, flyers and the like to reverse or [indecipherable] the damage to CAIR's reputation caused by the Recipient's Breach.

This Agreement shall be construed and interpreted in accordance with the laws of the District of Columbia.

This Agreement shall become effective upon execution.

IN WITNESS WHEREOF, we have hereunto set our hands and seals

this ___ day of _____, 20__.

Signed, sealed and delivered in the presence of:

_____   _____(SEAL)
_____   _____(SEAL)

Exhibit III-2

**EXHIBIT IV**



**CAIR**

Maryland and Virginia

585 N. Grove St Suite G-10
Herndon, Virginia 20170
Tel:703.689.3100 Fax:703.689.9858
E-mail: info@cairmdva.com,  URL: www.cairmdva.com

January 31, 2007

To:   Andrew Taylor  Chairman/CEO
      600 Corporate Park Dr.
      St. Louise, MO 63105

Dear Mr. Taylor

I hope that everything is fine.  Let me First start by thanking you for taking the time to read my concerns.

I am writing in response to a letter dated January 22, 2007 From Mr. Kris Stuber Group Human Resources
Manager.

This letter was sent to an employee, one Iftikhar Saiyed of Enterprise leasing Company a Maryland
Corporation headquartered in Rockville Maryland.

Mr. Saiyed has been employed since May 2003, he has maintained his present position since August 2004.
Since that time Mr. Sayed has related to me that he has endured very hostile treatment from his then
supervisor Kevin Terne.

Mr. Saiyed bore this treatment until it cumulated in a very explosion setting in 04-23-2005.

After the incident Mr. Sayed reported his complaint to Mr. Matt Bedois the assistant Manager.  Mr. Saiyed
never heard, or was it ever again referred to.  Therefore, the harassment, the disrespect continued.

At this point Mr. Taylor I would like to point out that:

1)  There appears to be no formal complaint procedure being instituted, which is a violation of
    several directives of the EEOC for large companies to institute.

In a Supreme Court Case the Court said …"these employee harassment complaints must use the employers
complaint process ("preventive or corrective opportunity provided by the employer…

Further for your consideration, The Supreme Court's affirmative defense in "hostile work environment case requires proof by the employer that the employee unreasonably failed to use the available complaint procedure...

Mr. Taylor as Civil Rights Director of the Virginia and Maryland chapter of nationally known organization such as CAIR. It is my earnest duty to seek justice for American Muslims and resolve these issues through education, mediation, and forge understanding between cultures at every instance.

It appears, I present for your consideration that Mr. Saiyed inability to understand how to effectively express himself and his lack of knowledge, was no reason for the ignoring of the many "inferences his complaint indicated." During meetings with corporate personell.

At those meetings Mr. Saiyed emphatically expressed that this conduct had continued from the time he met Kevin in the Arlington Branch. He also stated that at no time during his hiring or training was he ever introduced to a complaint procedure, or instructed in the way that Enterprise institutes or enforces and discrimination policies.

Although the Vice Presidents met with Mr. Saiyed and feel they have finalized it.

I would suggest that they reconsider addressing these concerns we are now verbalyzing. These concerns are not new. They were in the Original Complaint filed by Mr. Saiyed with The Arlington VA Human Rights Commission and The EEOC filed the same time in 2005 as it was given Mr. Bedois. If you or your representative did review it, once again there is a reason for concern regarding the complaint process. Please once again thank you for your time I look forward to hearing from the appropriate representatives of your organization.

Sincerely,

Mr. Morris L. Days J.D.
Civil Rights Manager
Council of American Islamic Relations
Maryland and Virginia

**EXHIBIT V**


**Maryland and Virginia**

585 N. Grove St Suite G-10
Herndon, Virginia 20170
Tel:703.689.3100  Fax:703.689.9858
E-mail: info@cairmdva.com,  URL: www.cairmdva.com

To:    Michelle B. Radcliffe                                    May 2, 2007
       1919 Gallows Road
       Suite 320
       Tysons Corner
       Vienna, Virginia 22182


From:  Mr. Morris L. Days, J.D.
       Civil Rights Manager, CAIR
       585 N. Grove Street
       Suite: G-10
       Herndon, Virginia 20170


Re:    Iftikhar Saiyed


Dear Ms. Radcliffe,

This is to inform you that Mr. Iftikhar Saiyed, a former employee of Enterprise Rent-A-Car has decided to
diligently pursue remedy and redress to the discrimination he received while employed at this firm.  Also, in
that regard I will be acting as his attorney and representative.

Under these circumstances I am hoping that we can discuss the matter further as you indicated in your letter
February 21, 2007.  I am certain that you as a representative for Enterprise Rent-A-Car also would like to
resolve this matter as expeditiously as possible and to as satisfactorily level to all parties involved.

I look forward to resolving the issue as expeditiously as possible and I look forward to hearing from you
soon.

Sincerely,

Morris L. Days
Civil Rights Manager
CAIR

**EXHIBIT VI**

Case: 09-1137 Document: 10-12 Date Filed: 04/24/2009 Page: *Exhibit#* 11

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 570-2008-01153 |

| Arlington Human Rights Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Iftikhar H. Saiyed** | **(703) 379-0405** | **02-28-1951** |

Street Address        City, State and ZIP Code

**P. O. Box 1451, Woodbridge, VA 22195**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **ENTERPRISE CAR RENTAL** | **500 or More** | **(703) 553-7744** |

Street Address        City, State and ZIP Code

**2000 Jefferson Davis Highway, Arlington, VA 22202**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address        City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | **02-22-2007** | **02-23-2007** |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify below.) | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

In 2005, I filed a discrimination complaint with the Arlington Human Rights Commission (Charge No. 10B-2005-00045). On or about February 22 or 23, 2007, I was discharged from my job in retaliation for the discrimination complaint that I filed.

I believe I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5/6/08    *Iftikhar H. Saiyed*<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**EXHIBIT VII**

L. H.
P. O. Box 1451
Woodbridge,
VA 22195

703-299-2107

ALBERT V. BRYAN
U.S. Courthouse
401 Courthouse Square
Alexandria, VA 22314-5798

U.S. District Court

To

United States District
Eastern District Of Virginia

James Byrne Court House
Office Of Clerk Civil Div'S

Alexandria, VA 22305

CERTIFIED MAIL

7006 2150 0001 9363 5844

UNITED STATES POSTAL SERVICE

0000

22305

U.S. POSTAGE PAID
HERNDON, VA
MAY 05, 2010
AMOUNT
$5.1
00052?

Jan 01 10 05:00p      Nora Lovely      804-452-4053      p.2

NIXIE                    3098   1      19   05/23/08

RETURN TO SENDER
INSUFFICIENT ADDRESS
UNABLE TO FORWARD
RETURN TO SENDER

28



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

```
       3098  1       19  05/23/08

NIXIE

       RETURN TO SENDER
INSUFFICIENT ADDRESS
    UNABLE TO FORWARD
       RETURN TO SENDER

       ·· ··: v H  7 2 />o S
```

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

s different from item 1?   ☐ Yes
ory address below:          ☐ No

2. Article Number
(Transfer from service label)

700L 2150 0001 9363 5644

4. Restricted Delivery? (Extra Fee)    ☐ Yes

☐ Registered         ☐ Express Mail
☐ Insured Mail       ☐ Return Receipt for Merchandise
                     ☐ C.O.D.

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

# EXHIBIT VIII

CAIR

453 New Jersey Ave s.e.,
Washington, D.C. 20003
Tele 202 488 8787   Fax 202 488 0833
E-mail info@cair.com,   URL www.cair.com

To: Mr. Bedoi's   From: Khadija Athirm

Fax: 804-452-4053   Pages: 5

Phone: 202-646-6093   Date: 7/29/00

Re:   CC:

___ Urgent   ___ For Review   ___ Please Comment   ___ Please Reply   ___ Please Recycle

Comments:

The information contained in this facsimile message is privileged and confidential. It is intended solely for the use of the individual named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this communication in any way, shape or form is strictly prohibited. If you have received this in error, please immediately notify us by telephone and return this original message to us at the above address by mail. Thank you.

#3

4-27-05

MATT BEDOIS, Assistant Manager )
Enterprise
2000 Jefferson Davis HWY
Arlington, VA 22262

---

Dear Mr. Bedois.

As I talked to you today about Rude
& crude behavior of Kevin C. Terne.
I am giving you in writing about
his rude behavior towards me.

4-23-05

on last saturday I came to work
few minutes late, then Kevin start
yelling & screaming at me at office
door. There was a lady customer
who heard all that his rude behavior
I said to Kevin that office clock
is fast. Then he put out his
Radio clock & put too close to my
face & ask read this time. He
talked to me in a very sarcastic & way
[rude behavior] He is constantly gt

(2)

4/23/05

on last SATURDAY morning he came too
close to my nose & start yelling &
screaming at me. When you are too
close & yell at someone then your
SALIVIA falls on other persons
face & that can be assault. Kevin's
saliva did falls on my face. His
behavior is too rude & abnormal
towerds me. I do not appreciate that
he came too close to me & yell at
me on last SAT morning. 4-23-05 customers
hear that rude behavior & that
is not for good for business.
Kevin had been yelling & screaming
on me for long time.
Leeon [car wash gentleman] heard
that Kevin did yell at me, when
I was moving cars downsteers
He still has master & slave behavior
towerds me. To reen a business, you
have to be polite with everyon.

(3)

For me From my point of view he does do not seems to be be capable to run a business. HE FROWNS at me all the time. He Spit on the floor where customers put their luggage. Customers are also not happy happy for his spitting on FLOOR. Since Spit transfer from FLOOR to luggage of customers & transfer from luggage to peoples hands. That is not Higenic

He had been constantly aggrevating me for Several months. I try to ignore it, but he seems to Constantly harrasing & bothering me. 4/23/05 On Saturday Brownson was late. Brownson came after me. But Kevin did not yell & scream at Brownson like he did to me. I also told to Dezlyn Carr about his Rude behavior of kevin. 4/23/05 On SAT morning Melinda Macdessi & crystal Lonberger did heard Kevins Rude behavior in your front office

4/23/05 SAT

(4

At about 9:Am Kevin ~~oted~~ ordene me
to go back home. crptel & Melaider
did heard his very rude & negative
behavior. On Sunday        Driver Mary
~~mary~~ came to work late. Kevin did
not ~~yell~~ yell & scream at Mary
like he yell at me. Kevin is very nice too
towerds lady employees.
Kevin told me on sexsal time us
very Rude voier & I do not need you".
His behavior is very discriminating towerds
me. Kevin smoke at work is not professional
on several occasion be he had been too
rude & humalitating ~~towerd~~ towards me
He did insult me on several occasion :
please let me know my optron's & CHAIN
~~Change~~ of commands for reporting
Kevin's Rude [ obnixious, harrasing,
insulting ] behavior to which authorty
If you have any question then please
contact me. on SAT 4/23/05 customer did realise
& heard that Kevin did harassed me & yell
at me
Kevin always comes too strong on me just
fr matter nothing

⑤

If you have any question.
then please contact me.
I will cooperat with you. Kevin
do needs to be Removed a chiscipline
Kevin's behavior is abnormal


very Sincerely.


Iftikhar H. Saiyed.

IFTIKHAR H. SAIYED

703-379-0405

P.O Box 1451
Woodbridge, VA 22195

---

p.s → If Kevin talks to me then
he should talk to me with other
employees so I have witness for
his Rude behavior. If I was a few
muits late for customer on 4/23/05 then
he could have given Rude to customer
Some time I stay longer past my hours
of work to give Rude to customers. His behavior
is not acceptable & not professional for this

# EXHIBIT IX

Exhibit # 10



Dated 7-31-08

Attorney,
Nadhria Al-Khalili
202-646-6034 Phone Number
202-488-0833 Fax
453-New Jersey Ave, SE
Washington DC 20003

Dear Ms. Al-Khalili

I talked to you last week and you told me that Jamil Morris Days is not an attorney
And you told me not to talked to him about my legal issue of employment
Discrimination, retaliation and harassment, (Enterprise, car leasing company
Arlington, 2020 Jefferson Davis Hwy, Arlington, VA 22202).
Jamil told me that he did file my appeal to Federal Court in Alexandria, Virginia
About a month ago, from today, but you found out that above said appeal has not been
filed. So Jamil lied to me. I gave all paper work about EEOC and Human Right
Counsel in Arlington, Virginia. He did not file any appeal to any of above said
Office. And time run out. I was fired on Feb22, 07 from enterprise as retaliation,
Since I file discrimination. Kevin Ternee was harassing me. He always frowns
On me. He always yells and screams on me. He came too close to my face and yell
Scream on as loud as he can. His salvia was falling on me. He knows that but him
Did not back off and kept on yelling at me. So that breaks the space rights spit
Falling on my face, should be as assault. So what if I reported it to his supervisor
Kevin Terne does not yell and scream at any other employees. So that creates
Discrimination case.
At this point Jamil Morris Days is at fault. Where should I file complain
About him. Can you please file a complain about Jamil, misrepresentation and
Loss of my appeal and case. I was told by your office that I have 2 years from the
Day I was fired (2-22-07) to go to Court for Discrimination, Retaliation, and
Harassment case.
Based on the issue that Jamil messed up my whole case, then can EEOC,
And Human Right Counsel gives me enough time to file my appeal or Court
Can give me another statue of limitation (extra time) to take care this case.
Can you find me an attorney who can take this case on Contingency basis?
If you have any question then please contact me. Thanks.
I WOULD TO KNOW THAT WHO IS RESPONSIBLE FOR MY DAMAGES
AND LOSS OF TIME,(MENTAL ANGUISH , PAIN AND SUFFERING OR
ANY OTHER DAMAGES,)

Iftikhar H-Saiyed.  7/31/08

Iftikhar H Saiyed
(703)379-0405
(804)452-1975 Message
P.O Box 1451
Woodbridge, VA 22195
-----------------------------------------

FAX  804 - 452 - 4053

**EXHIBIT X**

In the Name of God, the Compassionate, the Merciful

 **CAIR**

**Council on American-Islamic Relations**
453 New Jersey Avenue, S.E.  Washington, DC 20003
Tel 202.488.8787  Fax 202.488.0833

August 7, 2008

Iftikhar Saiyed
P.O. Box 1451
Woodbridge VA 22195

Dear Mr. Saiyed:

Thank you for contacting CAIR National regarding your complaint. Unfortunately, we are unable to assist you at this time. The Virginia Human Rights Council did not find any discrimination in regards to your complaint. In addition, on appeal they came to the same decision.

Please note that Jamil Days was never employed by CAIR National. Mr. Days was an independent contractor at a CAIR chapter in Herndon, which conducted its business separately from our offices here in Washington DC. If you wish to file a complaint against Mr. Days please contact the Virginia Bar Association.

If you have any questions or complaints in the future, please do not hesitate to contact us.

Sincerely,

Nadhira Al-Khalili
National Legal Counsel

NA/fq



Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, DC 20003

# CAIR

221951451 B003

Iftikhar Saiyed
P.O. Box 1451
Woodbridge VA 22195

**EXHIBIT XI**

Case: 09-1137     Document: 10-7     Date Filed: 04/24/2009     Page: Exhibit #6

EEOC Form 161 (2/08)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: Iftikhar H. Saiyed<br>P. O. Box 1451<br>Woodbridge, VA 22195 | From: **Washington Field Office**<br>**1801 L Street, N.W.**<br>**Suite 100**<br>**Washington, DC 20507** |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 570-2008-01153 | Janet Stump,<br>**Enforcement Supervisor** | (202) 419-0736 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| **X** | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
|  | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other *(briefly state)* |

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Danak Hut

Enclosures(s)

**Dana Hutter,**
**Director**

**AUG 05 2008**

*(Date Mailed)*

cc:   **Department Human Resources**
**Human Resources Director**
**ENTERPRISE**
**2273 Research Blvd.**
**Suite 600**
**Rockville, MD 20850**

Enclosure with EEOC
Form 161 (2/08)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law.</u>*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**EXHIBIT XII**



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF   VIRGINIA
(Alexandria Division)

-------------------------------------------------------------------------------

Iftikhar H. Saiyed
804-452-1975
P.O.Box 1451
Woodbridge, VA 22195
    Plaintiff,

    V.

                          Civil Action No.  1:08 cv 1147  Jcc/JFA

Enterprise  Rent-A-Car
301-731-7275
8100 Professional Place.
Suite 306
Landover, MD 20785

    Defendant

-------------------------------------------------------------------------------

### COMPLAINT
-------------------

Plaintiff believes that  he has been discriminated against in violation of TitleVII
Of the Civil Rights Act of 1964, because of his race (GROUNDS/
REFERENCE TO LAWS OR STATUES IN FEDERAL COURT.)
Plaintiff  believes that his supervisor Kevin  Ternee was constantly
Harassing him, and he  came too close to plaintiff and he yell and scream too
Much.  Keven Ternee was not harassing to other employees.
Plaintiff filed a complain to Human Right Counsel in  Arlington Virginia. As long
As H.R Counsel was  doing their investigation, Enterprise left him alone. As soon
As Employer won the case of discrimination, then Employer fired, plaintiff by
Finding lame excuses, that Plaintiff was sleeping on job. And plaintiff was not
Sleeping  on job, Driver Brownson is always sleeps on job. And Airport police
Officer did saw that. Double Tree driver, Zaffer, has seen many times that
Driver Brownson sleeps in his bus on duty. And he never got fired from job.
 This case is Discrimination and Retaliation, ( for filing
Discrimination in Arlington County)
Plaintiff is requesting back wages, job  back, and  damages for mental anguish, pain
and suffering.
(Relief you are requesting, include for jury if desired)

804-452-1975  Res.
703-379-0405 message
804-691-7836 cell

                     *Iftikhar H. Saiyed.*
                                PRO SE
Iftikhar H. Saiyed Pro se 10/28/2008
P.O. Box 1451
Woodbridge, VA. 22195

10/28/08

U.S District court, Alexandria
VA

Dear Sir/Mann

RECEIVED
MAILROOM

OCT 3 1 2008

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

1:08 CV 1147

please keep however what ever
many copies for you + for
defendant.

please mail me back
all signed, date stamped
+ court no. copies off at
my address

If you have any question
Then please call me

Thanks"

Afshar Saiyed

804 - 452 - 1975 Res
804 - 691 - 7836 cell

P.O Box 1451

Woodbridge, VA    22195

CERTIFIED MAIL

7007 2680 0003 0058 9960

To

United States District Co
For Eastern District of Virginia
Alexandria, Division
Civil Section of the clerk office
401 Court House Square

—— I/A 22 3/4 -

I. SAIYED
PO Box 1451
Woodbridge
VA 22195

# EXHIBIT XIII

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
IFTIKHAR H. SAIYED,           )
                              )
      Plaintiff,              )
                              )
                              )
         v.                   )      1:08cv1147 (JCC)
                              )
                              )
ENTERPRISE RENT-A-CAR,        )
                              )
      Defendant.              )
                              )
```

**M E M O R A N D U M   O P I N I O N**

_____This matter is before the Court on Defendant Enterprise
Rent-A-Car's (Defendant's) Motion to Dismiss or, Alternatively,
for Summary Judgment.  For the following reasons, the Court will
deny Defendant's Motion to Dismiss and grant its Motion for
Summary Judgment.

## I. Background

The facts alleged in Plaintiff Iftikhar H Saiyed's
(Plaintiff's) Complaint are as follows.  Plaintiff was employed
by Defendant.  During his employment, Plaintiff's supervisor
Kevin Ternee (Ternee) constantly harassed him and yelled at him.
Ternee did not harass other employees.

Plaintiff filed a complaint against Defendant with the
Human Rights Council in Arlington, Virginia.  Documents submitted
by Defendant show that this allegation likely refers to a Charge

1

of Discrimination (Charge) that he filed with the Arlington Human Rights Commission (HRC) and the United States Equal Employment Opportunity Commission (EEOC) in 2005, alleging race discrimination by Defendant.  Def.'s Mot. at Ex. 2.

During the HRC's investigation, Plaintiff was not subjected to discrimination.  After the investigation was complete, and the HRC cleared Defendant of liability, Defendant fired Plaintiff.  Documents submitted by Defendant show that Defendant terminated Plaintiff's employment on February 24, 2007. *Id.* at Ex. 3.

Defendant's stated reason for firing Plaintiff was that Plaintiff slept on the job.  Plaintiff did not sleep on the job, but another employee, Brownson, did.  Several people witnessed Brownson sleeping, but Defendant did not fire Brownson. Defendant actually fired Plaintiff because of his race and in retaliation for the discrimination complaint that Plaintiff filed with the HRC.  Documents submitted by Defendant show that Plaintiff filed a second Charge with the HRC and EEOC on May 6, 2008, alleging retaliatory discharge.  *Id.* at Ex. 2.

On October 31, 2008, Plaintiff filed a complaint in this Court alleging racial discrimination and retaliation under the Civil Rights Act of 1964.  On December 10, 2008, Defendant filed a Motion to Dismiss or, Alternatively, for Summary Judgment.  A proper *Roseboro* notice accompanied this motion [12].

2

*See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).
Plaintiff has not opposed the motion.  This matter is currently
before the Court.

## II.   Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal
sufficiency of the complaint, *see Randall v. United States*, 30
F.3d 518, 522 (4th Cir. 1994).  In passing on a motion to
dismiss, "the material allegations of the complaint are taken as
admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)
(citations omitted).  Moreover, "the complaint is to be liberally
construed in favor of plaintiff."  *Id.*  In addition, a motion to
dismiss must be assessed in light of Rule 8's liberal pleading
standards, which require only "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8.  Nevertheless, while Rule 8 does not require "detailed
factual allegations," a plaintiff must still provide "more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do."  *Bell Atlantic Corp.
v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007)
(citation omitted).

Summary judgment is appropriate only if the record
shows that "there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of
law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv.
Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).  The party seeking
summary judgment has the initial burden to show the absence of a
material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325
(1986).  A genuine issue of material fact exists "if the evidence
is such that a reasonable jury could return a verdict for the
non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 248 (1986).  To defeat a properly supported motion for
summary judgment, the non-moving party "must set forth specific
facts showing that there is a genuine issue for trial."  *Id.*
(quotation omitted).  The facts shall be viewed, and all
reasonable inferences drawn, in the light most favorable to the
non-moving party.  *Id.* at 255; *see also Lettieri v. Equant Inc.*,
478 F.3d 640, 642 (4th Cir. 2007).

In addition, complaints filed by *pro se* plaintiffs are
construed more liberally than those drafted by an attorney.  *See
Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Khozam v.
LSAA, Inc.*, 2007 WL 2932817 at *3 (W.D. N.C. Oct. 5, 2007).
While a court is not expected to develop tangential claims from
scant assertions in a complaint, if a *pro se* complaint contains
potentially cognizable claims, a plaintiff should be allowed to
particularize these claims.  *Treadwell v. Murphy*, 878 F. Supp.
49, 51-52 (E.D. Va. 1995) (citing *Beaudett v. City of Hampton*,

4

775 F.2d 1274 (4th Cir. 1985); *Coleman v. Peyton*, 340 F.2d 603,
604 (4th Cir. 1965)).

### III. Analysis

Defendant argues that Plaintiff's claim under Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Act),
is time-barred because Plaintiff failed to file a Charge of
Discrimination (Charge) with the EEOC within 300 days of the
allegedly discriminatory or retaliatory act.  The Complaint does
not specify the date on which Plaintiff was fired or the date on
which Plaintiff filed a Charge with the HRC and the EEOC.
Defendant, however, submits that it fired Plaintiff on February
24, 2007 and that Plaintiff filed a Charge for retaliation on
May 6, 2008, 437 days later.  Defendant contends that Plaintiff's
Charge was untimely filed and the Court must dismiss his
Complaint.

The Act requires that a petitioner with an employment
discrimination claim file a Charge "within [180] days after the
alleged unlawful employment practice occurred" or 300 days after
the unlawful practice when "the person aggrieved has initially
instituted proceedings with a State or local agency with
authority to grant or seek relief from such practice."  42 U.S.C.
§ 2000e-5(e)(1).

Fourth Circuit precedent is clear that "fil[ing] a
charge with the [] EEOC within 300 days of the alleged violation"

is a mandatory statutory prerequisite to any Title VII claim.
*Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005)
(citing *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir.
2002)).  "[A] violation not made the subject of a timely charge
is 'the legal equivalent of a discriminatory act which occurred
before the statute was passed' and is 'merely an unfortunate
event in history which has no present legal consequences.'"  *Id.*
(quoting *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977)).

        The Complaint does not provide any additional
information or supporting documentation pertaining to either the
Charges that Plaintiff filed or Plaintiff's dismissal by
Defendant.  Defendant, however, has submitted a stamped copy of a
Charge that Plaintiff submitted to the HRC and the EEOC on
May 6, 2008, claiming retaliatory discharge under Title VII.
Def.'s Mot. to Dismiss at Ex. 2.  Defendant also submitted the
Notice of Charge of Discrimination issued by the EEOC to
Defendant, dated May 23, 2008, and the Dismissal and Notice of
Rights issued by the EEOC on August 5, 2008, finding that
Plaintiff's "charge was not timely filed with EEOC."  *Id.* at Ex.
2.  Finally, Defendant submitted a memorandum from Defendant to
Plaintiff, terminating Plaintiff's employment "effective today."
*Id.* at Ex. 3.  This letter was signed by Plaintiff and is dated
February 24, 2007.  *Id.*

It is "well-established that a district court ruling on a 12(b)(6) motion to dismiss may consider documents 'sufficiently referred to in the complaint' whose authenticity is not disputed, even if such documents are not attached to the complaint." *Koken v. Aon Risk Serv., Inc.*, 2006 WL 90068, *3 (E.D. Va. 2006) (citations omitted). Plaintiff has not disputed the authenticity of the documents submitted by Defendant with its motion.

Nevertheless, the Court declines to rely on these documents in the context of a motion to dismiss because the Complaint does not directly refer to them. In the Complaint, Plaintiff only refers to the first Charge that he filed, alleging race discrimination, but Defendant did not submit that document to the Court. Instead, Defendant offers Plaintiff's second Charge, in which Plaintiff alleges that he was discharged in retaliation for his first Charge. The Complaint does not refer to this document. Viewing the allegations in the Complaint in the light most favorable to Plaintiff, *pro se*, and not considering the documents that Defendant attached to its motion, the Court will deny Defendant's Motion to Dismiss.

The Court will also evaluate the merits of Defendant's alternative Motion for Summary Judgement. The Court notes that Defendant has complied with the requirements of Federal Rule of Civil Procedure 56. Further, the following facts are clear from the exhibits submitted by Defendant and are undisputed by

Plaintiff: (1) Defendant terminated Plaintiff's employment on
February 24, 2007, (2) Plaintiff acknowledged this termination on
February 24, 2007, (3) Plaintiff filed a Charge with the HRC and
EEOC alleging that his termination was the result of retaliation
on May 6, 2008, and (4) the EEOC dismissed the Charge because it
was untimely filed.

Based on these undisputed facts, and drawing all
inferences in Plaintiff's favor, it is clear that Plaintiff filed
his Charge more than 300 days from the date of the conduct of
which he complains.  Because of this delay, Plaintiff's Title VII
claim fails to comply with the mandatory requirements of 42
U.S.C. § 2000e-5(e)(1).  The Court will dismiss this claim.

### IV.  Conclusion

For these reasons, the Court will deny Defendant's
Motion to Dismiss and grant its Motion for Summary Judgment.

An appropriate Order will issue.


January 13, 2009                    _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE

8

**EXHIBIT XIV**



**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1137

IFTIKHAR H. SAIYED,

    Plaintiff - Appellant,

  v.

ENTERPRISE RENT-A-CAR,

    Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  James C. Cacheris, Senior
District Judge.  (1:08-cv-01147-JCC-JFA)

Submitted:  August 20, 2009    Decided:  August 24, 2009

Before WILKINSON and MICHAEL, Circuit Judges, and HAMILTON,
Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Iftikhar H. Saiyed, Appellant Pro Se.  Edward Lee Isler, ISLER,
DARE, RAY, RADCLIFFE & CONNOLLY, PC, Vienna, Virginia, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Iftikhar H. Saiyed appeals the district court's order denying Defendant's motion to dismiss and granting Defendant's summary judgment motion on his race discrimination and retaliation claims, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 (2006).   We have reviewed the record and find no reversible error.   Accordingly, we affirm the district court's order.   See Saiyed v. Enterprise Rent-A-Car, No. 1:08-cv-01147-JCC-JFA (E.D. Va. Jan. 13, 2009).   We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

                                          AFFIRMED

2