UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IFTIKHAR SAIYED,

    Plaintiff,

v.                               Civil Action No. 10-0022 (PLF)

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS ACTION NETWORK, INC.,

    Defendant.

---

## MEMORANDUM OPINION

This matter is before the Court on motions by the defendant to dismiss the plaintiff's complaint or, in the alternative, to consolidate this case with a related civil action. After careful consideration of the parties' arguments, the relevant legal authorities, and the entire record in this case and in related cases, the Court will grant the defendant's motion to dismiss with regard to the plaintiff's claim alleging violations of the District of Columbia Consumer Protection Act, but will deny the defendant's motion to dismiss the remainder of the plaintiff's claims. The Court will grant the defendant's motion to consolidate this case with a related matter.[1]

---

[1] The documents reviewed by the Court in connection with the motions in question include the following: plaintiff's first amended complaint ("Compl."); defendant's motion to dismiss the complaint ("MTD"); plaintiff's opposition to the motion to dismiss ("Opp."); defendant's reply in support of its motion to dismiss ("Reply"); defendant's motion to consolidate related cases ("Cons. Mot."); plaintiff's opposition to defendant's motion to consolidate; and defendant's reply in support of the motion to consolidate.

## I. BACKGROUND

### *A. Plaintiff's Claims*

According to the plaintiff's first amended complaint, defendant Council on American-Islamic Relations Action Network, Inc. ("CAIR") operates as a public interest law firm formed to protect the civil liberties of Muslims in the United States. Compl. ¶ 15. CAIR has a main office in the District of Columbia and a variety of branch offices located throughout the country. Id. Until recently, one of those branch offices ("CAIR-VA") was located in Herndon, Virginia. Id. ¶ 3.

Beginning in 2006, CAIR-VA employed as a staff attorney an individual named Morris J. Days III. Compl. ¶ 4. Mr. Days was tasked with "provid[ing] legal representation to Muslims complaining of various civil rights abuses," id., and CAIR-VA referred to him as its "resident attorney" in promotional materials. Id. ¶ 17. Mr. Days, however, was not a licensed attorney, and the plaintiffs contend that CAIR-VA "knew or should have known" that he was not. Id. ¶ 5. In February of 2008, after receiving complaints about Mr. Days from his clients, CAIR-VA terminated his employment. Id. ¶¶ 33-35.

Plaintiff Iftikhar Saiyed visited the offices of CAIR-VA on January 8, 2007, and met with Mr. Days. Compl. ¶ 54-55. Mr. Saiyed told Mr. Days that he believed his employer, Enterprise Rent-A-Car ("Enterprise") was discriminating against him on the basis of race. Id. ¶ 54. Claiming that Mr. Saiyed had a strong case, Mr. Days stated that he would file complaints against Enterprise with the Equal Employment Opportunity Commission and the Virginia Human Rights Council and in federal court. Id. ¶ 55.

In February of 2007, Enterprise terminated Mr. Saiyed's employment, allegedly because he had filed discrimination complaints against Enterprise in 2005. Compl. ¶ 56. Mr. Days claimed that he would pursue a retaliation claim against Enterprise on Mr. Saiyed's behalf. Id. In May of 2008, Mr. Saiyed, with Mr. Days' assistance, filed complaints against Enterprise with the EEOC and the Human Rights Council. Id. ¶ 61. Mr. Days claimed that these complaints were duplicates of original complaints that he himself had already filed on Mr. Saiyed's behalf a year before. Mr. Days also arranged for Mr. Saiyed to mail a complaint to a federal court in Virginia. Id. Mr. Saiyed paid Mr. Days approximately $300 in legal fees at or around that time. Id. ¶ 62.

In July of 2008, Mr. Saiyed learned from a CAIR employee that Mr. Days was not a licensed attorney and that he had never filed any complaints on Mr. Saiyed's behalf. Id. ¶ 67. On August 5, 2008, Mr. Saiyed received a letter from the EEOC which informed him that "his file setting forth a complaint against Enterprise was being closed because [his] complaint was not timely filed." Id. ¶ 73. Mr. Saiyed then filed a related complaint in federal court. Id. ¶ 74. That complaint was dismissed as time-barred. Id. ¶ 75.

*B. Prior Lawsuit*

Mr. Saiyed's complaint bears a close resemblance to a complaint filed in this Court on November 18, 2008, by a group of plaintiffs who claimed to have been defrauded by Mr. Days. See Lopez v. Council on American-Islamic Relations Action Network, Inc., Civil Action No. 08-1989, Complaint at 1 (D.D.C. Nov. 18, 2009). The complaint in that prior case, which the Court will call Lopez I, alleged that Mr. Days and CAIR had conspired to hold Mr. Days out to the public as a licensed attorney and then conceal from his "clients" the fact that he

3

was not actually qualified to represent them. The complaint, which was filed by the same counsel who represents Mr. Saiyed, named as defendants CAIR, Morris Days, numerous CAIR/CAIR-VA employees, and an assortment of individuals and companies alleged to be connected to CAIR in some capacity. Many of the same facts alleged in Mr. Saiyed's complaint were also set forth in the Lopez I complaint, often in exactly the same language. Compare, e.g., Compl. ¶¶ 2-8, with Lopez I, Civil Action No. 08-1989, Complaint ¶¶ 2-6 (D.D.C. Nov. 18, 2009).

Unlike Mr. Saiyed's complaint, the Lopez I complaint framed the facts it alleged as the basis for a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), which deems unlawful, among other things, the formation of a conspiracy "to participate . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c)-(d). According to the Lopez I plaintiffs, Morris Days and CAIR violated RICO by conspiring to defraud Mr. Days' clients and then to conceal that fraud. See Lopez I, 657 F. Supp. 2d 104, 111 (D.D.C. 2009). The plaintiffs also alleged that the defendants were liable for violations of the consumer protection statutes of Virginia and the District of Columbia and for common law fraud, breach of fiduciary duty, infliction of emotional distress, conversion, and unjust enrichment. See id. at 108.

The Lopez I plaintiffs claimed that a federal court could exercise subject matter jurisdiction over their complaint because it alleged a RICO violation and thus presented a question of federal law. See Lopez I, Civil Action No. 08-1989, Complaint ¶ 9 (D.D.C. Nov. 18, 2008). Judge Urbina, however, determined that the complaint failed to state a viable claim under RICO. See Lopez I, 657 F. Supp. 2d at 114-15. He ruled that the plaintiffs' allegations did not

4

"indicate that the RICO Defendants had engaged in a 'pattern of racketeering activity'" or formed a conspiracy, id., and that the plaintiffs lacked standing to bring a RICO claim because, while they alleged that they had been injured by *Days*, they had failed to adduce facts from which it could be inferred that they had been injured by any joint action of Days and CAIR. Id. at 111-12. Plaintiffs' RICO claim therefore was dismissed. See id. at 116. In the absence of the RICO claim, the asserted basis for federal question jurisdiction no longer existed. Id. at 115-16. Lacking jurisdiction over the plaintiffs' case, Judge Urbina also dismissed the plaintiffs' state law claims. Id. That ruling was affirmed on appeal. See Lopez I, No. 09-7129, 2010 WL 2689367 (D.C. Cir. June 8, 2010).

On January 6, 2010, the Lopez I plaintiffs initiated a new round of litigation by filing an amended version of their previously dismissed complaint. See Lopez v. Council on American-Islamic Relations Action Network, Inc., Civil Action No. 10-0023, Complaint (D.D.C. Jan. 6, 2010) ("Lopez II"). On the same day, Mr. Saiyed filed his own complaint, which was closely related to that of the Lopez II plaintiffs. On January 13, 2010, Mr. Saiyed filed an amended complaint. The first fifty-three paragraphs of that complaint are largely identical to those of the Lopez II complaint. Both complaints allege many of the same facts that were presented in Lopez I. Unlike the complaint in Lopez I, however, they name a single defendant, CAIR, and invoke the Court's jurisdiction pursuant to 28 U.S.C. § 1332, alleging that the parties are diverse and that the amount in controversy is greater than $75,000. See Compl. ¶ 10. No references to RICO appear in either the Lopez II or the Saiyed complaint, both of which assert claims for fraud, breach of fiduciary duty, intentional infliction of emotional distress, and violations of D.C. Code § 28-3901 and Va. Code § 59.1-204 — all state law causes of action.

5

On February 24, 2010, CAIR moved to consolidate the instant case with Lopez II and to reassign both cases to Judge Urbina for adjudication, since Judge Urbina presided over Lopez I. See Cons. Mot. at 1. The next day, CAIR filed the pending motion to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and Rule 12(b)(7) of the Federal Rules of Civil Procedure. See MTD at 2-3. In the alternative, CAIR seeks the dismissal of each count of the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules.

## II. DEFENDANT'S MOTION TO DISMISS

For the reasons set forth in the Court's Opinion issued this same day in Lopez v. Council on American-Islamic Relations Action Network, Inc., Civil Action No. 10-0023, the Court will dismiss Mr. Saiyed's claim under the District of Columbia Consumer Protection Act but otherwise will deny CAIR's motion to dismiss the plaintiff's claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Again for the reasons set forth in the Lopez II Opinion, the Court also will deny the defendant's motion to dismiss the complaint pursuant to Rule 12(b)(7) and Rule 19(b) of the Federal Rules for failure to join an indispensable party. All that remains of CAIR's motion to dismiss, then, is its argument that the plaintiff's complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules because Mr. Saiyed's claims fail to meet the amount-in-controversy requirement of 28 U.S.C. § 1332.

Under 28 U.S.C. § 1332, this Court has subject matter jurisdiction over a case not presenting a federal question only if "the matter in controversy exceeds the sum or value of $75,000. . . ." 28 U.S.C. § 1332(a). When the court considers whether a claim meets the

amount-in-controversy requirement, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938) (footnotes omitted). "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." Id. at 289. In short, "the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." Rosenboro v. Kim, 994 F.2d 13, 17 (D.C. Cir. 1993).

Mr. Saiyed seeks damages in this matter as follows: "consequential monetary damages, including . . . $300 paid to CAIR for legal costs, at least $600 for travel expenses incurred during [p]laintiff's meetings with Days, and damages relating to [p]laintiff's claims against Enterprise." Compl. ¶ 79. Mr. Saiyed has not made any attempt to quantify the damages related to his allegedly mishandled discrimination claims. In addition, the plaintiff seeks damages "not yet quanitifed but no less than $75,001" for "severe emotional, mental, and physical distress . . . including anxiety, lack of appetite, inability to sleep, relationship problems with his friends and family, inability to sustain employment resulting from his anxiety, and other manifestations." Id. ¶ 80. He also seeks punitive damages for "egregious and intentional and/or reckless conduct." Id. ¶ 115. Even if the Court excludes from consideration damages related to Mr. Saiyed's allegedly mishandled discrimination claims, which Mr. Saiyed has not made any attempt to quantify, CAIR has not shown to a legal certainty that the plaintiff cannot recover the jurisdictional minimum.

While the Court has serious doubts as to whether the plaintiff will ever be able to prove damages of more than $75,000, based on the facts before it the Court cannot conclude that it is "legally certain" that Mr. Saiyed's claims for damages do not meet the jurisdictional minimum. Although these facts do suggest that Mr. Saiyed may ultimately prove unable to document his alleged physical and emotional distress, they do not demonstrate with the requisite degree of certainty that the plaintiff's claim is for less than $75,000. Evidence that the plaintiff has drafted his complaint with an eye toward the amount-in-controversy requirement does not, by itself, demonstrate the legal deficiency of his claim for damages or that he has acted in bad faith. See 14AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3702 (3d ed. 2009) ("Even if the plaintiff apparently has amended the complaint to obtain federal jurisdiction, unless it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the action presumably will not be dismissed."); Wolde-Meskel v. Vocational Instruction Project Community Service, Inc., 166 F.3d 59, 63 (2d Cir. 1999) ("[T]o demonstrate a filing in bad faith, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. at 289)).

In addition to the allegations in support of his claim for intentional infliction of emotional distress, Mr. Saiyed has alleged sufficient facts to possibly permit the inference that Mr. Days acted with "actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of another" — making punitive damages theoretically available. Simbeck, Inc. v. Dodd Sisk Whitlock Corp., 508 S.E.2d 601, 604 (Va. 1999); see also Nwachukwu v. Karl, 223 F. Supp. 2d 60, 68 (D.D.C. 2002) (finding that plaintiff had alleged facts sufficient to

support a claim for punitive damages where he asserted, among other things, that the defendant attorney "willfully disregarded the rights of his client, the plaintiff, in providing the plaintiff with legal representation"). In combination, these claims for unliquidated damages related to emotional distress and for punitive damages could permit Mr. Saiyed to recover an amount in excess of $75,000. A defense motion for summary judgment on this basis, however, may be appropriate after some discovery.

## III. CONCLUSION

CAIR has requested that this case be consolidated with Lopez II, Civil Action No. 10-0022. See Cons. Mot. at 1. Because the Court finds that the two cases share "common question[s] of law or fact," they will be consolidated. FED. R. CIV. P. 42(a). Furthermore, for the reasons provided above, the Court will grant in part and deny in part CAIR's motion to dismiss the plaintiff's complaint. An Order consistent with this Memorandum Opinion shall be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 30, 2010