UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
IFTIKHAR SAIYED,                                    )
                                                    )
            Plaintiff,                              )
                                                    )
      v.                                            )      Civil Action No. 10-0022 (PLF)
                                                    )
COUNCIL ON AMERICAN-ISLAMIC                          )
RELATIONS ACTION NETWORK, INC.,                     )
                                                    )
            Defendant.                              )
_____ )
                                                    )
RENE ARTURO LOPEZ, et al.,                          )
                                                    )
            Plaintiffs,                             )
                                                    )
      v.                                            )      Civil Action No. 10-0023 (PLF)
                                                    )
COUNCIL ON AMERICAN-ISLAMIC                          )
RELATIONS ACTION NETWORK, INC.,                     )
                                                    )
            Defendant.                              )
_____ )


OPINION

        These consolidated matters are before the Court on the motion for

summary judgment brought by defendant Council on American-Islamic Relations Action

Network, Inc. ("CAIR").  The plaintiffs are several individuals who sought legal services

from a CAIR chapter office operating in Virginia ("CAIR-VA"), and who were

connected with that chapter's "Resident Attorney," Morris Days.  Four of the five

plaintiffs paid fees directly to Mr. Days, but he failed to diligently pursue their legal

claims, and it later emerged that he was not even an attorney.  The plaintiffs claim that

they have suffered damages as a result of Days' alleged fraud.  Mr. Days is now dead and CAIR-VA has disbanded.  The plaintiffs seek redress from CAIR-VA's parent organization, CAIR, asserting claims for fraud, breach of fiduciary duty, and intentional infliction of emotional distress under the common law of Virginia, in addition to a claim under the Virginia Consumer Protection Act.

Based on a careful consideration of the parties' papers, the relevant legal authorities, and pertinent portions of the record in this case, the Court will grant CAIR's motion for summary judgment.  The Court also will deny the plaintiffs' request, made under Rule 56(f) of the Federal Rules of Civil Procedure, that the Court enter judgment in their favor on certain of their claims.[1]

## I.  BACKGROUND

The Court previously issued two Opinions in these cases in which it described in some detail the underlying facts.  See Lopez v. CAIR, 741 F. Supp. 2d 222, 227-29 (D.D.C. 2010); Saiyed v. CAIR, 742 F. Supp. 2d 84, 86 (D.D.C. 2010).  Although these Opinions were issued upon CAIR's motions to dismiss the plaintiffs' complaints — motions which the Court denied in large part — the basic narratives set forth in the complaints are not disputed by the defendant.  See Def.'s MSJ at 20-33.  The Court

---

[1]    The papers considered in connection with the pending motion include the following, for which docket entries are provided with reference to Civil Action No. 10-0023, unless otherwise noted:  Lopez plaintiffs' first amended complaint ("Lopez Am. Compl.") [Dkt. No. 5]; plaintiff Saiyed's first amended complaint ("Saiyed Am. Compl.") [Dkt. No. 3 in Civil Action No. 10-0022; CAIR's motion for summary judgment (Def.'s MSJ") [Dkt. No. 80]; plaintiffs' opposition to CAIR's motion for summary judgment ("Pls.' Opp.") [Dkt. No. 74]; plaintiffs' statement of facts ("Pls.' Stmt. of Facts") [Dkt. No. 74]; CAIR's reply ("Def.'s Reply") [Dkt. No. 85]; CAIR's response to plaintiffs' statement of facts ("Def.'s Resp. Stmt. of Facts") [Dkt. No. 85-1]; and plaintiffs' reply ("Pls.' Reply") and memorandum in support thereof ("Pls.' Reply Memo.") [Dkt. No. 87].

therefore refers the reader to its earlier Opinions for a fuller exposition of the facts relating to each of the individual plaintiffs.  The present discussion will be limited to the basics.

Defendant CAIR is a national organization committed to protecting the civil rights of Muslims living in the United States.  CAIR's headquarters office is located in the District of Columbia, with affiliated chapter offices — which exist as independent non-profit organizations — located throughout the country.  Chapters come into being through a process involving a written application that is submitted to CAIR headquarters, which then either denies or approves the applicant's request to initiate a new chapter. Deposition of Khalid Iqbal (May 11, 2011) ("Iqbal 2011 Dep.") at 28:18-29:15 (Pls.' Ex. 3) [Dkt. No. 81-3].  It was through this process that in 2002 a CAIR chapter was formed in Bethesda, Maryland, which later moved its operations to nearby Herndon, Virginia, where it was known by the name of CAIR-VA.  In 2006, Morris Days, who had been volunteering his time to support CAIR-VA's civil rights work, was hired by CAIR-VA to continue these efforts.  Id. at 69:18-72:1.  Mr. Days later was advertised by the chapter as being its "Resident Attorney" and "Civil Rights Manager."  See Pls.' Ex. 21 [Dkt. No. 74-23].  Unbeknownst to CAIR-VA and its clients, however, Mr. Days was not actually an attorney.

At various points during 2007, each of the plaintiffs approached Mr. Days at CAIR-VA in search of legal counsel.  Three plaintiffs — Mohammed Barakatullah Abdussalaam, Bayenah Nur, and Iftikhar Saiyed — sought Days' assistance with their respective claims of workplace discrimination.  Another plaintiff, Aquilla Turner, sought his help in initiating divorce proceedings, while plaintiff Rene Arturo Lopez desired legal

counsel in relation to an immigration matter.  Several of the plaintiffs paid money directly to Days for these services, and Turner and Lopez also performed chores at Days' home as a form of compensation.  But Days neglected to fulfill his commitments to these five plaintiffs.  As a result, some of them lost opportunities to file their claims within applicable limitations periods.  In addition, one plaintiff, Ms. Nur, relied on Days' advice and rejected her employer's offer to transfer her to another division of the company.  Ms. Nur was then placed on unpaid leave, and she and her family ultimately felt compelled to move to North Carolina in search of new job opportunities.

In 2008, each of the plaintiffs came to learn that Days had lied to them regarding his pursuit of their legal issues, and that Days was not even an attorney.  All of the plaintiffs allege that as a consequence of Days' betrayal, they have suffered emotional distress, in addition to the loss of their out-of-pocket expenses and, for some, missed opportunities to pursue their legal claims.

The plaintiffs filed these two civil actions in 2010, following the dismissal of an earlier case arising from the same facts.  In that previous action, the plaintiffs had alleged that CAIR and Days committed a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), but Judge Urbina determined that their complaint failed to state a viable RICO claim.  Lopez v. CAIR, 657 F. Supp. 2d 104, 114-15 (D.D.C. 2009).  Judge Urbina then declined to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims for fraud, breach of fiduciary duty, intentional infliction of emotional distress, and violation of Virginia and District of Columbia consumer protection statutes.  Id. at 115-16.  In the two present actions, the

plaintiffs have brought the same state law claims, invoking this Court's diversity jurisdiction.[2]

CAIR filed motions to dismiss the two complaints in February 2010, which this Court granted in part and denied in part. The Court first rejected three jurisdictional challenges, namely that: the plaintiffs had failed to join required non-diverse parties; the plaintiffs' claims for damages did not satisfy the diversity statute's amount in controversy requirement; and the plaintiffs lacked Article III standing. Lopez v. CAIR, 741 F. Supp. 2d at 231-34. Turning to the merits, the Court determined that Virginia law should apply; it therefore dismissed the claim brought under the District of Columbia's consumer protection statute. Id. at 234-35. The Court then concluded that the plaintiffs in their complaints had set forth allegations sufficient to state claims for each of their causes of action under Virginia law. Id. at 236-39. The Court also granted CAIR's motions to consolidate the two cases. Id. at 239; Saiyed v. CAIR, 742 F. Supp. 2d at 89-90.

CAIR now moves for summary judgment.[3] It renews its objection to this Court's jurisdiction, contending that now, after discovery, it is evident that the plaintiffs are unable to satisfy the amount in controversy requirement under 28 U.S.C. § 1332. On the merits, CAIR maintains that there are no grounds upon which to impute Days' purported liability to CAIR. In addition, CAIR argues that the plaintiffs' alleged

---

[2]     The two actions are functionally the same, save for the identity of the plaintiffs. The Lopez complaint asserts claims on behalf of Lopez, Turner, Abdussalaam, and Nur. The Saiyed complaint is brought solely on Mr. Saiyed's behalf. This Court's earlier Opinion in Saiyed was limited to a discussion of that plaintiff's satisfaction of the amount in controversy requirement. See Saiyed v. CAIR, 742 F. Supp. 2d at 88-90.

[3]     CAIR requests the opportunity to present oral argument on this motion, see Def.'s MSJ at 1, but the Court has determined that argument is not needed.

emotional suffering is not sufficiently severe to support a claim for intentional infliction

of emotional distress.  The plaintiffs oppose CAIR's motion and, in addition, they ask

that the Court enter judgment in their favor with respect to some of their claims.

According to the plaintiffs, this request, brought under Rule 56(f) of the Federal Rules of

Civil Procedure, amounts to a "de facto" cross-motion for partial summary judgment.

<u>See</u> Pls.' Reply at 1 & n.2.[4]

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986); <u>see</u> FED. R. CIV. P. 56(a), (c).  In making that determination, the court must view

the evidence in the light most favorable to the nonmoving party and draw all reasonable

inferences in its favor.  <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (per curiam);

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255; <u>Talavera v. Shah</u>, 638 F.3d 303, 308

(D.C. Cir. 2011).  A disputed fact is "material" if it "might affect the outcome of the suit

under the governing law."  <u>Talavera v. Shah</u>, 638 F.3d at 308 (quoting <u>Anderson v.

Liberty Lobby, Inc.</u>, 477 U.S. at 248).  A dispute over a material fact is "genuine" if it

could lead a reasonable jury to return a verdict in favor of the nonmoving party.  <u>See</u>

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Paige v. DEA</u>, 665 F.3d 1355, 1358 (D.C. Cir.

---

[4]     Under Rule 56(f), the Court is empowered to grant summary judgment for
a nonmovant, after giving notice and a reasonable time to respond.  FED. R. CIV. P.
56(f)(1).  CAIR does not contend that the plaintiffs' request for partial summary
judgment is procedurally improper, and by its reply brief CAIR has responded to the
plaintiffs' joint opposition and cross-motion.

2012).  "[T]he moving party is entitled to judgment as a matter of law if the nonmoving

party 'fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial.'"

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986)).  "Credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge at summary judgment.  Thus, [the court] do[es] not determine the truth of

the matter, but instead decide[s] only whether there is a genuine issue for trial."  Barnett

v. PA Consulting Group, Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-

Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)); see also Tolan v. Cotton,

134 S. Ct. at 1866; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

### III.  DISCUSSION

#### A.  *Plaintiffs' Procedural and Evidentiary Objections*

As an initial matter, the plaintiffs contend that the Court should deny

CAIR's summary judgment motion for three reasons:  (1) the motion was not timely filed

within 30 days after the close of discovery; (2) the motion and its accompanying exhibits

were not properly served upon the plaintiffs; and (3) much of CAIR's evidence has been

proffered without foundation or authentication, and this evidence therefore cannot

support summary judgment in its favor.  Pls.' Opp. at 1-5; Pls.' Reply Memo. at 1-6.

As to the first point, CAIR concedes that it did not file its motion — which

was submitted under seal in hard copy with the Clerk of the Court — until one day

following its due date, although CAIR did file its Notice of Filing Motion Under Seal on

the motion's due date.  Def.'s Reply at 2.  CAIR contends, without citation to authority,

that it is "standard practice in this jurisdiction" that the date of filing a notice of intent to file under seal is treated as the date of filing the motion itself.  Id.  As to the plaintiffs' second point, CAIR fails to address their argument regarding defective service of the motion and exhibits, which, according to the plaintiffs, were provided to them via e-mail and an online file-sharing service.  But the Court does not observe any prejudice that has resulted from these two procedural defects, and it does not agree that automatic denial of CAIR's motion for summary judgment is a sanction warranted by these circumstances. See Nesbitt v. Holder, 966 F. Supp. 2d 52, 55 (D.D.C. 2013) ("[T]he central purpose of the summary judgment device . . . is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.") (quoting Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999)) (alterations in original).

As for the plaintiffs' objections to CAIR's proffered evidence, plaintiffs contend that "the vast majority" of these materials are "emails, letters, and similar documents" that have been submitted to the Court with no declaration or testimonial evidence made upon personal knowledge either to authenticate them or to provide foundation for their connection to this case.  Pls.' Opp. at 5.  In addition, both parties raise hearsay objections aimed at various items of evidence produced by the other side. The Court will touch on these evidentiary issues where they may be relevant to the substantive matters addressed in the discussion that follows.

## B.  Subject Matter Jurisdiction

In its motion for summary judgment, CAIR renews a jurisdictional objection that this Court previously addressed in the context of CAIR's motions to dismiss the plaintiffs' complaints.  Specifically, CAIR contends that the plaintiffs have

not put into controversy an amount of damages greater than $75,000, which is necessary for the successful invocation of this Court's diversity jurisdiction under 28 U.S.C. § 1332.  At the motion to dismiss stage, the Court examined the plaintiffs' pleadings and concluded that they had made colorable claims for damages in excess of the jurisdictional minimum.  See Lopez v. CAIR, 741 F. Supp. 2d at 231-34; Saiyed v. CAIR, 742 F. Supp. 2d at 88-89.  CAIR now contends that the plaintiffs cannot substantiate these claims, warranting dismissal for lack of subject matter jurisdiction.  See Def.'s MSJ at 30, 47-55; Def.'s Reply at 19-23.

CAIR raises two purported defects in connection with the plaintiffs' claims for damages.  First, CAIR responds to the rationale followed by this Court in its Opinion denying CAIR's motion to dismiss the Lopez complaint, where the Court concluded that because Ms. Nur's claims for out-of-pocket expenses and lost wages could, in conjunction with a reasonable award of punitive damages, total more than $75,000, her claimed damages sufficed to support diversity jurisdiction as to her and her co-plaintiffs in that civil action.  Lopez v. CAIR, 741 F. Supp. 2d at 231-34.  CAIR now contends that Ms. Nur's claimed damages — stated in the complaint as amounting to $8,925 — must be reduced by nearly half to account for her receipt of governmental benefits as well as her savings on child care expenses during the period of her unemployment.  Def.'s MSJ at 30, 50 n.7 (citing Deposition of Bayenah Nur (Sept. 4, 2012) at 92:14-15 (Def.'s Ex. Q) [Dkt. No. 80-1]).  With these reductions made, Ms. Nur's damages, even including a punitive damages award of ten times' the amount of the compensatory damages — an award which likely rests at the outer boundary of conformity with due process, see Lopez v. CAIR, 741 F. Supp. 2d at 234 (citing cases) —

would yield a total award of substantially less than $75,000.  The plaintiffs do not directly respond to this argument.  See Pls.' Opp. at 33-34; Pls.' Reply Memo. at 15-16.

CAIR's second jurisdictional attack centers on the merits of the legal issues for which the plaintiffs sought Mr. Days' counsel.  Specifically, CAIR contends that none of the plaintiffs actually were prejudiced by Days' failure to resolve their legal problems, and therefore no compensatory damages could be awarded on the basis of his neglect.  Def.'s MSJ at 48-55.

The plaintiffs respond to these arguments by focusing on a different aspect of their claims, namely, their request for compensatory damages for their alleged emotional distress.  They maintain that each individual plaintiff has suffered psychological harm as a consequence of Days' fraud, and contend that a reasonable jury could award them compensatory damages in excess of $75,000.  The plaintiffs support these assertions with three pieces of evidence:  (1) the plaintiffs' own statements; (2) the written psychological reports submitted by Dr. Ron Kimball, based on his evaluations of each of the plaintiffs; and (3) a survey of jury awards rendered in the District of Columbia, Maryland, and Virginia from 1990 to 2009 in cases involving claims of fraud or breach of fiduciary duty resulting in emotional distress, showing a range of awards from roughly $10,000 to $1.25 million.  Pls.' Opp. at 33-34; Pls.' Stmt. of Facts ¶¶ 75-80; Pls.' Reply Memo. at 15-16.

The Supreme Court has explained that "if, from the face of the pleadings, it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose

of conferring jurisdiction, the suit will be dismissed." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) (emphasis added).  Thus, "the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." Rosenboro v. Kim, 994 F.2d 13, 17 (D.C. Cir. 1993).  Once the jurisdictional facts have been challenged, however, the party invoking federal jurisdiction "must produce evidence supporting a legal uncertainty about whether [it] could prove" its claimed damages. Id. at 18; see also Mace v. Domash, 550 F. Supp. 2d 101, 104 (D.D.C. 2008) ("When the defendant challenges the jurisdictional amount, plaintiff must come forward with some facts in support of her assertion that the jurisdictional amount has been met.").

Because CAIR has now challenged the factual bases for the plaintiffs' claimed damages, the plaintiffs must produce some evidence to support these claims. This they have done by way of proffering answers to interrogatories and deposition testimony in which each of the plaintiffs attests to his or her emotional suffering, which they attribute to the experience of being defrauded by Morris Days.  See Pls.' Stmt. of Facts ¶¶ 76-80 (citing plaintiffs' respective answers to interrogatories and deposition testimony).  Under Virginia law, the plaintiffs may be able to collect compensatory damages for these alleged harms, even if they do not prevail on their claims for intentional infliction of emotional distress.  See Fairfax Hosp. v. Curtis, 492 S.E.2d 642, 647 (Va. 1997).  Given the plaintiffs' personal accounts of their suffering, it is not "legally certain" that a jury would not grant to some or all of the plaintiffs an award of

damages in excess of $75,000.[5]  Whether or not the plaintiffs ultimately do recover

awards of this amount, the Court is not "very confident that [they] *cannot* recover" them.

Rosenboro v. Kim, 994 F.2d at 17 (emphasis added).  Accordingly, the Court will not

dismiss these actions for want of jurisdiction.

### C.  Plaintiffs' Theories of Liability

Morris Days worked at CAIR-VA, and his relationship with the plaintiffs

was centered there.  This lawsuit, however, is brought against CAIR, the national parent

organization.  The plaintiffs advance three legal theories according to which they assert

CAIR can be held liable for Days' purportedly tortious conduct.  First, they argue that

Mr. Days functioned as an agent (though not a servant) of CAIR itself.  See Pls.' Opp. at

9-20; Pls.' Reply Memo. at 7-10.[6]  Second, the plaintiffs contend that because Days was

employed by CAIR-VA — which, they argue, was itself an agent of CAIR — it follows

---

[5]      The plaintiffs' satisfaction of the amount in controversy requirement is
bolstered by the survey of jury awards that they have offered, which demonstrates the
possibility that an amount in excess of $75,000 feasibly could be awarded to them.
Although this survey was cited only in the plaintiffs' reply, the Court observes that the
survey originally was put into the record in 2010 as an exhibit to plaintiffs' opposition to
CAIR's motions to dismiss.  See Dkt. Nos. 14-2, 16.  The plaintiffs also rely on the
psychological reports of Dr. Ron Kimball.  See Dkt. No. 73-14 in Civil Action No.
10-0022.  CAIR protests that the Court specifically limited the parties to conducting fact
rather than expert discovery.  Def.'s Resp. Stmt. of Facts at 5; see Scheduling Order of
Feb. 24, 2011, ¶ 2 [Dkt. No. 28].  The Court has not considered the reports of Dr.
Kimball.

[6]      If Days had been employed directly by CAIR, the relationship would have
been one of employer and employee, which could have made CAIR liable for Days' torts
under the doctrine of *respondeat superior*.  See infra at 21-25.  Although the plaintiffs
point out that CAIR's organizational deponent referred to Days as "one of our
employees," see Pls.' Reply Memo. at 7-9 (quoting Deposition of Khadija Athman (May
10, 2011) at 130:22-131:4 (Pls.' Ex. 1) [Dkt. No. 81-1]), this lone statement does not
suffice to support a finding that Days was CAIR's employee as a matter of Virginia law.

that CAIR may be held liable for Days' actions.  See Pls.' Opp. at 20-22; Pls.' Reply

Memo. at 11-13.  The plaintiffs' third theory of liability is direct rather than vicarious;

they assert that CAIR itself breached duties that it owed to the plaintiffs, and that CAIR

therefore has caused the plaintiffs to suffer harms in addition to those stemming from

Days' conduct.  See Pls.' Opp. at 9, 25 nn.13-14, 31-32.

   The plaintiffs' third argument — for direct liability — focuses on CAIR's

alleged role in covering up Days' misdeeds subsequent to its discovery of them, and

CAIR's purported failure to adequately make amends to those who might have been

harmed by Days.  See Pls.' Opp. at 25 nn.13-14, 31-32; Pls.' Stmt. of Facts ¶¶ 119-34.

They contend that CAIR affirmatively misrepresented that Days was an independent

contractor rather than an employee of CAIR-VA, in an apparent effort by CAIR to

distance itself from Days.  Pls.' Stmt. of Facts ¶¶ 108-11, 128.  The plaintiffs maintain

that CAIR's actions give rise to CAIR's direct liability to plaintiffs for breach of

fiduciary duty, fraud, intentional infliction of emotional distress, and violation of Virginia

consumer protection law.  See Pls.' Opp. at 25 nn.13-14, 31-32.

   This argument is easily rejected.  Even assuming the truth of the plaintiffs'

assertions, their legal claims fail as a matter of law.  Simply put, the plaintiffs do not

articulate any legal basis nor cite any legal authority to support their contention that

CAIR itself owed them a fiduciary duty directly.  Nor do they persuasively explain how

CAIR's taking the position that Days was merely an independent contractor of CAIR-

VA, rather than an employee, might constitute a breach of such a duty, fraud, or a

violation of the Virginia Consumer Protection Act.  The Court is similarly unpersuaded

that CAIR's conduct meets the high standard for liability under a theory of intentional

infliction of emotional distress.  See infra at 29-30.  In essence, the plaintiffs seem to

claim only that, in their view, CAIR owed them a meaningful response in the wake of the

revelation of Days' wrongful conduct.  But this claim presumes an answer to the central

disputed issue in these matters, which is whether CAIR actually bears responsibility for

Days' conduct.  The Court therefore turns to consider the plaintiffs' two theories of

vicarious liability.

### 1.  Plaintiffs' First Theory of Vicarious Liability: Morris Days Was the Agent of CAIR Itself

#### a.  Apparent Agency

The plaintiffs maintain that Morris Days was CAIR's agent, rendering

CAIR liable for the damages caused by Days' tortious conduct.  Pls.' Opp. at 9-20; Pls.'

Reply Memo. at 7-10.  CAIR counters that Days was neither an employee of CAIR nor

any other type of agent.  Def.'s Reply at 3-12; see also Def.'s MSJ at 33-35 (arguing that

Days acted only on behalf of CAIR-VA, and not on behalf of CAIR).  The plaintiffs rely

primarily on a theory of what they label "apparent authority," arguing that CAIR held

Days out to the public as an attorney acting on CAIR's behalf, and that this representation

— in conjunction with Days' own representations to the plaintiffs that he was acting as a

CAIR attorney — makes CAIR liable for Days' torts.  See Pls.' Opp. at 9-16.  According

to the plaintiffs, "[t]he evidence in the record establishes that Defendant CAIR

represented to the public that Morris Days was acting as its attorney in its Herndon,

Virginia office, and that Plaintiffs were aware of this representation."  Id. at 11.

Under a theory of apparent or ostensible agency, "[a]n agency [is] created

by operation of law and established by a principal's actions that would reasonably lead a

third person to conclude that an agency exists." Sanchez v. Medicorp Health System, 618 S.E.2d 331, 333 (Va. 2005) (quoting BLACK'S LAW DICTIONARY 67 (8th ed. 2004)) (first alteration in original) (internal quotation marks omitted).  The Supreme Court of Virginia has never endorsed this theory as a basis of tort liability.  See id. at 335; Craddock v. A&E Moving & Storage, Inc., 82 Va. Cir. 491 (Va. Cir. Ct. 2011).  The court in Sanchez did, however, discuss two alternative articulations of the theory.  First drawing on the Restatement (Second) of Torts, the court noted that an agency relationship may arise where a third party accepts services "in the reasonable belief that the services are being rendered by the employer or by his servants."  Sanchez v. Medicorp Health System, 618 S.E.2d at 334 (quoting RESTATEMENT (SECOND) OF TORTS § 429 (1965)).  The court then cited the Restatement (Second) of Agency, which provides that "[o]ne who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person" for the apparent agent's torts.  Id. (quoting RESTATEMENT (SECOND) OF AGENCY § 267 (1958)).  Under either standard, the principal's actions must cause the third party either to reasonably believe in, or to justifiably rely upon, the status of the apparent agent.

Assuming arguendo that the plaintiffs have invoked a viable ground for tort liability under Virginia law, the record demonstrates that CAIR's public representations regarding Days could not have led the plaintiffs to reasonably believe that Days worked for CAIR, nor that the plaintiffs justifiably relied on such a belief.  The plaintiffs highlight the fact that CAIR posted on its website two media stories in which Days' legal work was celebrated.  In one story, a local NBC affiliate describes CAIR's

success in helping individuals to resolve immigration matters, and it quotes "CAIR's Morris Days" as stating that, "[w]e petitioned the courts, and they've had a change of heart."  Pls.' Ex. 19 [Dkt. No. 74-21].  Another story reports that "Morris Days, an attorney with the Maryland-Virginia chapter of the Council on American-Islamic Relations, has helped [sixteen persons] file [immigration petitions] at federal courthouses in the region in recent months."  Pls.' Ex. 20 [Dkt. No. 74-22].  But CAIR points out a critical factual flaw in the plaintiffs' apparent agency argument, namely that the two media stories describing Days as a CAIR attorney did not appear on CAIR's website until December 2007, *after* each of the plaintiffs already had initiated their respective relationships with Days.  Def.'s Reply at 5-6.  Thus, none of the plaintiffs could have relied on CAIR's representations in engaging Days as their legal representative, nor could those representations have given them a reasonable belief that Days was working on behalf of CAIR.

b.  General Agency Principles

The plaintiffs' second argument in support of the theory that the relationship between CAIR and Days was one of principal and agent relies on the general definition of agency, which is "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act."  Allen v. Lindstrom, 379 S.E.2d 450, 454 (Va. 1989) (quoting Raney v. Barnes Lumber Corp., 81 S.E.2d 578, 584 (Va. 1954)) (internal quotation marks omitted).  "The power of control is an important factor in determining whether an agency relationship exists."  Reistroffer v. Person, 439 S.E.2d 376, 378 (Va. 1994); see also Allen v. Lindstrom, 379 S.E.2d at 454 ("The power of

control is the determining factor in ascertaining the alleged agent's status."). If Days was acting on CAIR's behalf and subject to CAIR's control, there would be an agency relationship between them, and the plaintiffs argue that such was the case. See Pls.' Opp. at 16-20.

Under Virginia law, "whether an agency relationship exists is a question to be resolved by the fact finder unless the existence of the relationship is shown by undisputed facts or by unambiguous written documents." Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P., 560 S.E.2d 246, 250 (Va. 2002) (quoting State Farm Mut. Auto. Ins. Co. v. Weisman, 441 S.E.2d 16, 19 (Va. 1994)) (alteration and internal quotation marks omitted); see also Reistroffer v. Person, 439 S.E.2d at 378 ("The question of agency *vel non* is one of fact for the fact finder unless the existence of an agency relationship depends upon unambiguous written documents or undisputed facts."). "Agency may be inferred from the conduct of the parties and from the surrounding facts and circumstances." Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P., 560 S.E.2d at 250 (quoting Drake v. Livesay, 341 S.E.2d 186, 189 (Va. 1986)) (alteration and internal quotation marks omitted). "[W]hat evidence shall be sufficient to establish agency in any given case . . . must be determined in view of the facts in each particular case." Id. (quoting Bloxom v. Rose, 144 S.E. 642, 643 (Va. 1928)). The party alleging the existence of an agency relationship bears the burden of proving it. Id. at 249.

The plaintiffs contend that because Days' workplace supervisor — Khalid Iqbal — served simultaneously as both CAIR's Director of Operations and as CAIR-VA's Volunteer Acting Executive Director, CAIR had direct control over Days through Iqbal. Pls.' Opp. at 16-20; Pls.' Stmt. of Facts ¶¶ 87-105. CAIR responds by arguing

that Iqbal's supervision and control of Days were executed strictly in his capacity as the Executive Director of CAIR-VA.  Def.'s MSJ at 40-43; Def.'s Reply at 7-9.  It is undisputed that Iqbal had authority to control Days' conduct in the workplace.  <u>See</u> Iqbal 2011 Dep. at 69:18-70:6, 94:21-95:3.  The question is whether the plaintiffs have raised a genuine issue of material fact as to whether CAIR itself — as opposed to CAIR-VA — controlled Days by way of his relationship to Iqbal.  The Court concludes that they have not and therefore will grant judgment to CAIR with respect to this theory of vicarious liability.

Khalid Iqbal was employed by CAIR as its Director of Operations, and CAIR lent Iqbal on a part-time basis to CAIR-VA, where he served as Volunteer Acting Executive Director, with supervisory authority over Morris Days.  <u>See</u> Iqbal 2011 Dep. at 44:20-23, 47:1-48:8, 69:18-70:6, 94:21-95:3.  The plaintiffs maintain that Iqbal's role as CAIR's Director of Operations included within its scope Iqbal's service as Executive Director of CAIR-VA, and thus his concomitant role as the workplace supervisor of Morris Days.  <u>See</u> Pls.' Opp. at 19.  They cite Iqbal's deposition testimony, in which he testified that part of his duties as CAIR's Director of Operations entailed managing relations with CAIR's chapters.  <u>See</u> Pls.' Stmt. of Facts ¶¶ 87-89 (citing Iqbal 2011 Dep. at 17:21-24:22).  The plaintiffs also point out that CAIR paid Iqbal's salary, <u>see</u> Iqbal 2011 Dep. at 19:19-20:5, 42:19-43:7, and that CAIR considered Iqbal's time spent at CAIR-VA to be a form of donation from the national headquarters to its chapter office.  Pls.' Stmt. of Facts ¶ 100 (citing email from Parvez Ahmed, Chairman of CAIR, to Rizwan Jaka, Chairman of CAIR-VA's board (Pls.' Ex. 25) [Dkt. No. 81-8]).  In

addition, the plaintiffs note that Iqbal was often in contact simultaneously with officers and directors at CAIR headquarters and with the directors of CAIR-VA.  Pls.' Opp. at 19-20.[7]  The plaintiffs argue that, in sum, "Iqbal's supervisory role over Days was financed by and on behalf of Defendant CAIR and fully aligned with his role at Defendant CAIR to supervise CAIR-VA as a chapter office," id. at 20, and they assert that "given the record in this case it is simply not credible to believe that Defendant CAIR could not order Iqbal to terminate Days or to impose controls over him."  Id. at 19.

   To the contrary, Iqbal has stated in a declaration proffered by CAIR that "no CAIR-National employee ever told [him] how to manage the operations of CAIR-VA," nor did CAIR "condition[] [his] salary as Director of Operations in any way upon the manner in which [he] served as CAIR-VA's acting executive director."  Declaration of Khalid Iqbal ¶ 7 (Def.'s Ex. BB) [Dkt. No. 85-2].  Likewise, several former members of CAIR-VA's board state in declarations that CAIR-VA made management decisions independently, not subject to control by CAIR, and that Iqbal carried out the directives of CAIR-VA's board.  See Declaration of Hassan Ahmad ("Ahmad Decl.") ¶¶ 2-10 (Def.'s Ex. AA) [Dkt. No. 85-2]; Declaration of Rizwan Jaka ("Jaka Decl.") ¶¶ 6-10 (Def.'s Ex. CC) [Dkt. No. 85-2]; Declaration of Karen Zhussanbay ¶¶ 6-9 (Def.'s Ex. DD) [Dkt. No. 85-2].[8]  For example, Hassan Ahmad states that "[i]n [Khalid Iqbal's] capacity as

---

[7]  The plaintiffs cite no evidence to support this point, but the Court observes that Iqbal, in a declaration submitted along with CAIR's reply brief, states that "CAIR National personnel were regularly consulted about issues" relating to CAIR-VA's operations.  Declaration of Khalid Iqbal ¶ 4 (Def.'s Ex. BB) [Dkt. No. 85-2].

[8]  The plaintiffs raise no objection to CAIR's submission of these declarations with its reply brief, which, given the plaintiffs' request for partial summary judgment in their favor, also serves as an opposition brief to their "de facto" cross-

executive director of CAIR-VA, Mr. Iqbal oversaw CAIR-VA volunteers and employees. If the CAIR-VA board would make a decision regarding personnel, including hiring and firing decisions and salary, the board would be presented with the issue and then vote on it.  Mr. Iqbal would then take responsibility for implementing the outcome of the board's decision."  Ahmad Decl. ¶ 9.  Similarly, Rizwan Jaka states that, "[a]s Mr. Iqbal ran the operations of CAIR-VA as its acting executive director, he did so pursuant to the supervision of CAIR-VA's volunteer board [and] [h]e was bound to the decisions made by the CAIR-VA volunteer board."  Jaka Decl. ¶ 7.  Jaka specifically notes that "Mr. Iqbal sought CAIR-VA volunteer board approval for [] terminating . . . Morris Days."  Id. ¶ 10.

The plaintiffs' contention — that because CAIR was Iqbal's direct employer and CAIR lent Iqbal to CAIR-VA to serve as its acting Executive Director, Iqbal's day-to-day management of CAIR-VA *ipso facto* entailed CAIR's control over Morris Days — is unsupported by the facts in the record.  Nor do the plaintiffs cite any legal authority to ground this proposition.  Furthermore, that Iqbal sometimes consulted with CAIR headquarters regarding CAIR-VA's operations does not suggest that CAIR had any control over decisions Iqbal made in his capacity as Executive Director of the chapter office; mere consultation cannot support an inference that such control existed.  Nor does the Court find it at all consequential that Iqbal used "his CAIR National email, letterhead, and title" in the course of supervising Days.  Pls.' Opp. at 20 (citing email from Iqbal to Days, signed as "Director of Operations CAIR" (Pls.' Ex. 22) [Dkt. No. 81-5]).

---

motion.  See Pls.' Motion for Leave to File Reply Brief [Dkt. No. 86]; Pls.' Reply Memo. at 11 n.6.

Finally, the plaintiffs emphasize that *after* the revelation of Days' conduct in 2008, CAIR-VA turned over all of its client files to CAIR, an act which, according to the plaintiffs, is indicative of the control that CAIR held with respect to Days and his civil rights work.  See Pls.' Reply Memo at 10; Iqbal 2011 Dep. at 120:13-122:12.  The Court is unpersuaded that CAIR's taking possession of CAIR-VA's legal files after the events relevant to plaintiffs' complaints regarding Days' conduct somehow demonstrates that CAIR exercised control over Days.  The plaintiffs are drawing an inference that simply does not follow from the facts cited.

Because the plaintiffs fail to raise a genuine issue of material fact regarding whether Morris Days was the agent of CAIR, the Court will grant judgment to CAIR on this theory of vicarious liability.

### 2.  Plaintiffs' Second Theory of Vicarious Liability: Morris Days Was CAIR-VA's Employee, and CAIR-VA Was CAIR's Agent

The plaintiffs' second theory of vicarious liability focuses on an alleged agency relationship between CAIR and CAIR-VA.  They argue that because Days was an employee of CAIR-VA, the chapter office would be liable for his tortious conduct under the doctrine of *respondeat superior*, and, in turn, CAIR-VA's liability may be imputed to CAIR, its purported principal.

### a.  Morris Days Was CAIR-VA's Employee

The first link in the chain concerns Days' relationship to CAIR-VA.  If Days was an employee of CAIR-VA, then, under the doctrine of *respondeat superior*, CAIR-VA would be liable for Days' tortious conduct provided that his conduct occurred

21

within the scope of his employment.  See Plummer v. Center Psychiatrists, Ltd., 476

S.E.2d 172, 173 (Va. 1996).  If Days was merely an independent contractor, however,

then CAIR-VA's vicarious liability would be more difficult to establish.  See Southern

Floors & Acoustics, Inc. v. Max-Yeboah, 594 S.E.2d 908, 911 n.1 (Va. 2004); McDonald

v. Hampton Training School for Nurses, 486 S.E.2d 299, 300-01 (Va. 1997).

 The Supreme Court of Virginia has explained the distinction between

these two forms of relationship:

> The factors which are to be considered when determining
> whether an individual is an employee or an independent
> contractor are well established: (1) selection and
> engagement; (2) payment of compensation; (3) power of
> dismissal; and (4) power to control the work of the
> individual. The fourth factor, the power to control, is
> determinative. This factor refers to control over the means
> and method of performing the work. It is immaterial
> whether the employer exercises this control; the test is
> whether the employer has the power to exercise such
> control.

McDonald v. Hampton Training School for Nurses, 486 S.E.2d at 301.  Furthermore,

"[w]hether a person is an employee or an independent contractor is generally a question

of fact for the jury," although "[w]here the evidence admits of only one conclusion, the

question is a matter of law."  Id. at 304.

 The Court agrees with the plaintiffs that the record admits of only one

conclusion on this point:  Days was an employee of CAIR-VA, not an independent

contractor.  Days' relationship with CAIR-VA satisfies the four factors set forth by the

Supreme Court of Virginia in McDonald:  CAIR-VA hired Days, see Iqbal 2011 Dep. at

70:23-71:19, 87:6-89:18; paid him compensation, see id.; held the power to dismiss him,

which it ultimately exercised, see id. at 120:22, 163:16-22; and also retained the power to

control his working activities.  See id. at 69:18-70:6, 94:21-95:3.  That CAIR-VA

characterized Days as an independent contractor rather than as a salaried employee for

financial reasons, see id. at 87:6-89:18, is immaterial to the question whether, under the

law of Virginia, he served as an employee of CAIR-VA.

   "[P]ursuant to the doctrine of *respondeat superior*, an employer is liable

for the tortious acts of its employee if the employee was performing his employer's

business and acting within the scope of his employment when the tortious acts were

committed."  Plummer v. Center Psychiatrists, Ltd., 476 S.E.2d at 173.  The vicarious

liability of an employer under this doctrine may extend to liability for its employee's

commission of intentional torts, such as fraud on a third party.  See Gina Chin & Assocs.,

Inc. v. First Union Bank, 537 S.E.2d 573, 576-79 (Va. 2000); Dudley v. Estate Life

Insurance Co., 257 S.E.2d 871, 874-77 (Va. 1979).  "When an employer-employee

relationship has been established, the burden is on the [employer] to prove that the

[employee] was *not* acting within the scope of his employment when he committed the

act complained of, and . . . if the evidence leaves the question in doubt it becomes an

issue to be determined by the jury."  Gina Chin & Assocs., Inc. v. First Union Bank, 537

S.E.2d at 577-78 (quoting Kensington Assocs. v. West, 362 S.E.2d 900, 901 (Va. 1987))

(some alterations in original) (internal quotation marks omitted).  When determining

whether a tortious act was committed within the scope of a servant's employment, "the

issue is 'whether the service itself, in which the tortious act was done, was within the

ordinary course of such business.'"  Id. at 578 (quoting Davis v. Merrill, 112 S.E. 628,

631 (Va. 1922)).

Sometimes in its motion for summary judgment, CAIR seems to agree with the plaintiffs' *respondeat superior* argument with regard to Days' conduct, stating plainly that "[t]he injuries that Days caused Plaintiffs — though not actually authorized by CAIR-VA . . . — were done 'in the course of employment' with CAIR-VA." Def.'s MSJ at 33 (quoting McNeill v. Spindler, 62 S.E.2d 13, 18 (Va. 1950)); see also id. at 33-35.  But later CAIR tries to insulate the now defunct CAIR-VA from any responsibility for Days' wrongdoing, saying it should stop with Days.  CAIR argues that CAIR-VA had made it known that it was not a "legal services organization," as well as that CAIR-VA staff members were not permitted to accept fees from clients.  Id. at 44-47.  CAIR maintains that the plaintiffs knew or should have known of these conditions, and that Days therefore was acting outside the scope of the "apparent authority" invested in him by his position at CAIR-VA when he agreed to provide legal services, for a fee, to the plaintiffs.  See id.

Days' interactions with the plaintiffs — which centered around his agreement to perform legal services for them — seem to fall quite neatly within the ordinary course of his business as CAIR-VA's "Resident Attorney" and "Civil Rights Manager."  At most, CAIR's arguments might raise genuine issues of material fact regarding whether the plaintiffs were aware of the scope of Days' authority, and how that awareness could affect the determination of *respondeat superior* liability.  But the Court need not resolve these issues because, as explained below, it ultimately concludes that the plaintiffs fail to raise any genuine issues of material fact regarding whether CAIR-VA was CAIR's agent.  Accordingly, even assuming that CAIR-VA would be vicariously liable for Days' actions under the doctrine of *respondeat superior* because Days was

CAIR-VA's employee acting within the scope of his employment, CAIR-VA's liability could not move up the chain to CAIR.

### b. CAIR-VA Was Not CAIR's Agent

As already described earlier in this Opinion, see supra at 16-17, Virginia law "define[s] agency 'as the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act,'" Allen v. Lindstrom, 379 S.E.2d at 454 (quoting Raney v. Barnes Lumber Corp., 81 S.E.2d at 584), and "[t]he power of control is an important factor in determining whether an agency relationship exists." Reistroffer v. Person, 439 S.E.2d at 378. A principal-agent relationship between CAIR and CAIR-VA would provide the legal basis for imputing CAIR-VA's liability to CAIR. See Murphy v. Holiday Inns, Inc., 219 S.E.2d 874, 875-78 (Va. 1975) (addressing franchisor's liability based on alleged negligence of franchisee); see also Infant C. v. Boy Scouts of America, 391 S.E.2d 322, 326 (Va. 1990) (noting that it was proper to submit to jury the question whether local Boy Scout troop was agent of Boy Scouts of America, which could have led to national organization's liability for troop's negligent hiring of Scoutmaster).

The plaintiffs — who ultimately bear the burden of proving the existence of an agency relationship between CAIR-VA and CAIR — cite various facts from which they infer that CAIR-VA functioned as CAIR's agent. With respect to manifestations of CAIR's consent that CAIR-VA act on its behalf, they highlight that CAIR posted on its website news stories about Days' work, see supra at 15-16, which, according to the plaintiffs, constitute public representations that CAIR's chapters comprise elements of the national organization. See Pls.' Opp. at 20-21. They also point to CAIR-VA's own

representations, citing a promotional document in which CAIR-VA seemed to describe itself as being essentially equivalent to CAIR.  Id. at 21 (citing Pls.' Ex. 21 [Dkt. No. 74-23]).

With regard to CAIR's purported control over CAIR-VA, the plaintiffs cite facts including:  Khalid Iqbal's alleged dual role as Director of Operations for CAIR and as Executive Director of CAIR-VA, Pls.' Stmt. of Facts ¶¶ 87-99; the substantial financial support provided by CAIR to CAIR-VA, which amounted to roughly a third of CAIR-VA's operating budget, id. ¶ 101 (citing Deposition of Rizwan Jaka (June 12, 2012) at 15:14-20:4 (Pls.' Ex. 6) [Dkt. No. 74-8]); a communication from CAIR's chairperson, Parvez Ahmed, to a CAIR-VA board member, from which the plaintiffs infer that Ahmed believed that CAIR held authority to mandate CAIR-VA's dissolution, id. ¶¶ 100, 102-03 (citing Pls.' Ex. 25 [Dkt. No. 81-8]); the absence of a written agreement governing CAIR-VA's rights in relation to its parent organization, id. ¶ 105 (citing Iqbal 2011 Dep. at 28:18-30:20, 34:2-35:25); and CAIR's having taken possession of CAIR-VA's client files after the discovery of Days' wrongdoing.  Id. ¶ 119 (citing Iqbal 2011 Dep. at 120:13-122:12); see also Pls.' Opp. at 20-22; Pls.' Reply Memo. at 11-13.[9]

These facts, even when viewed in the light most favorable to the plaintiffs, could not support a reasonable jury's finding that CAIR-VA was the agent of CAIR.  As explained supra at 19-20, there are simply no legal or factual bases for the plaintiffs'

---

[9]     CAIR raises a hearsay objection to the plaintiffs' reliance on the e-mail from Parvez Ahmed to the CAIR-VA board member.  Def.'s Resp. Stmt. of Facts at 21. But the plaintiffs appear to be relying on this communication as an indication of Mr. Ahmed's state of mind with respect to his understanding of the relationship between CAIR and CAIR-VA.

assertion that Khalid Iqbal's role as CAIR-VA's Volunteer Acting Executive Director somehow gave CAIR control over Days, and the same conclusion holds true with respect to CAIR's purported control over CAIR-VA.  Likewise, the Court already has rejected the contention that CAIR's taking possession of CAIR-VA's legal case files after the discovery of Days' wrongdoing was indicative of CAIR's control over Days or CAIR-VA.  See supra at 21.  The Court also is unpersuaded that CAIR's provision of financial support to CAIR-VA entailed control over the chapter office; the plaintiffs cite no evidence to support such an inferential leap.

Similarly, the plaintiffs read far too much into the email written by CAIR's chairperson, Parvez Ahmed, and sent to a member of CAIR-VA's board.  In the email, Mr. Ahmed states that in 2005, CAIR had "pulled back from *recommending* the dissolution of [CAIR-VA]."  Pls.' Ex. 25 [Dkt. No. 81-8] (emphasis added).  Mr. Ahmed also refers to a prior understanding between CAIR and CAIR-VA related to their collective fundraising efforts in the Washington, D.C. region, and he states that "[i]t was resolved that we [would] periodically review this arrangement keeping open the possibility of future dissolution [of CAIR-VA]."  Id.  The plaintiffs contend that Ahmed "makes it clear that Defendant CAIR reserved the right to dissolve CAIR-VA."  Pls.' Stmt. of Facts ¶ 103.  But the actual text of the email demonstrates only that Ahmed understood the question of CAIR-VA's continued existence to be a matter of discussion between CAIR-VA and CAIR.  Ahmed's words are not susceptible to the inference plaintiffs draw.

The plaintiffs also infer, based on the apparent absence of a written agreement defining the terms of CAIR-VA's use of CAIR's intellectual property

(including CAIR's name and its logo), that "CAIR-VA operated entirely at the pleasure of Defendant CAIR."  Pls.' Stmt. of Facts ¶ 105.  Plaintiffs' counsel explored this issue when deposing Khalid Iqbal, who stated that to his knowledge, CAIR had never faced a situation where a chapter office was engaging in conduct that could degrade CAIR's brand, which might have prompted CAIR to attempt to close down the chapter or to force a change in its behavior.  See Iqbal 2011 Dep. at 34:11-35:25.  But the legal conclusion that plaintiffs draw from these facts — that CAIR possessed plenary control over CAIR-VA because "at best there was nothing more than an at-will oral agreement" between them, see Pls.' Stmt. of Facts ¶ 105 — is speculative, and the plaintiffs are unable to cite any specific facts actually demonstrating CAIR's retention of such control.  The only direct evidence in the record regarding the relationship between CAIR and CAIR-VA indicates that CAIR-VA's board managed its affairs independently.  See supra at 19-20 (citing the declarations of former CAIR-VA board members).

In sum, on this record, the plaintiffs fail to demonstrate the existence of genuine issues of material fact regarding whether CAIR-VA was CAIR's agent.  Instead, they cite facts that show no more than a cooperative relationship between the two entities; these facts cannot support the inferences that the plaintiffs argue can be drawn from them.  Accordingly, the Court will grant judgment to CAIR on this second theory of vicarious liability.[10]

---

[10]     The plaintiffs also advance an alternative argument, that "CAIR utilized CAIR-VA as an alter ego to effect the fraudulent cover-up of Days's tortious conduct," warranting application of the principle that "allows a court to pierce the corporate veil when the control by one entity over another is used to effect or protect a fraud."  Pls.' Opp. at 22.  Even assuming that principles of veil-piercing apply with respect to the relationship between CAIR and CAIR-VA, the Court summarily rejects this argument,

*D.  Intentional Infliction of Emotional Distress*

The foregoing analysis establishes that judgment must be granted to CAIR on all of the plaintiffs' claims.  But CAIR makes an additional argument concerning the plaintiffs' claims for intentional infliction of emotional distress ("IIED"), contending at the threshold that Morris Days' conduct cannot give rise to liability for this tort.  To succeed on an IIED claim under Virginia law, the plaintiffs must show that "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe."  Lopez v. CAIR, 741 F. Supp. 2d at 237-38 (quoting Hatfill v. The New York Times Co., 532 F.3d 312, 325-26 (4th Cir. 2008)).  Because the tort of intentional infliction of emotional distress is disfavored under Virginia law, Virginia courts have defined the tort narrowly.  See, e.g., Ruth v. Fletcher, 377 S.E.2d 412, 415-16 (Va. 1989).  In particular, to prevail on an IIED claim, a plaintiff must demonstrate that he or she has experienced emotional injury so severe that "no reasonable person could be expected to endure it."  Russo v. White, 400 S.E.2d 160, 163 (Va. 1991).

At the motion to dismiss stage in these cases, the Court recognized that it was a "close question" whether the plaintiffs' allegations of emotional distress were sufficiently severe to state claims for IIED.  Lopez v. CAIR, 741 F. Supp. 2d at 238.  The Court permitted the claims to advance mainly because the plaintiffs had included the allegation that Days' actions resulted in their inability to sustain employment.  See id. Now, after discovery, it is evident that the plaintiffs cannot carry their burden to support

---

finding no basis upon which to conclude that CAIR utilized CAIR-VA to perpetrate a fraud or other type of wrongdoing.

this allegation.  CAIR cites deposition testimony and answers to interrogatories in which several of the plaintiffs admit that they have continued to work despite their alleged emotional suffering.  Def.'s MSJ at 57-59.  The plaintiffs do not counter CAIR's assertion that none of them has been forced to exit the workforce due to depression or other psychological problems.  See Pls.' Opp. at 29-30.  Their failure to raise any genuine issues of material fact regarding their degree of emotional suffering provides an additional ground for granting judgment in CAIR's favor on the plaintiffs' IIED claims.

IV.  CONCLUSION

For the foregoing reasons, the Court will grant CAIR's motion for summary judgment, and it will reject the plaintiffs' request for partial summary judgment under Rule 56(f) of the Federal Rules of Civil Procedure.  A separate Order accompanies this Opinion.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 29, 2015